**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 1, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP751-CR**

Cir. Ct. No. **2019CF56**

STATE OF WISCONSIN

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JUSTIN M. CHURCH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Forest County: LEON D. STENZ, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 STARK, P.J. Justin M. Church appeals from a judgment convicting him of one count of possession of methamphetamine, as a repeater, and from an order denying his postconviction motion for resentencing. Church argues that he is entitled to resentencing because the circuit court prejudged the outcome of his

sentencing hearing. He bases his argument on a comment the court made about prison at a pretrial hearing. The State argues that the court's comment was made in jest—as a joke or sarcastic remark—and did not demonstrate objective bias. We conclude that the court's comment alone, and in the context that it was made, does not demonstrate objective bias, and we therefore affirm.

## BACKGROUND

¶2     Church was a passenger in a vehicle that was stopped by law enforcement for speeding. Initially, Church provided officers with a false name, and a search of his person revealed a syringe in his pocket containing a clear liquid, which later tested positive for methamphetamine. The State charged Church with one count of obstructing an officer and one count of possession of methamphetamine, both as a repeater.[1]

¶3     During a July 24, 2019 final pretrial conference, at which Church was not present, the State presented its plea offer to the circuit court: the State agreed to dismiss and read in at sentencing the charge of obstructing an officer in exchange for Church's plea to possession of methamphetamine. The State would then recommend a six-year sentence, bifurcated as four years' initial incarceration and two years' extended supervision, and Church was free to argue at sentencing.

---

[1] The State also originally charged Church with possession of drug paraphernalia. Church filed a motion to dismiss that count of the criminal complaint, arguing that possession of a hypodermic syringe is excluded from the definition of drug paraphernalia under WIS. STAT. § 961.571(1)(b)1. (2019-20). The State subsequently filed an Information with only the counts for obstructing an officer and possession of methamphetamine.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

During the parties' discussion regarding scheduling the plea hearing, the following exchange occurred:

> [Defense Counsel]: And I note, again, this case is regarding a syringe that tested positive for methamphetamine.
>
> THE COURT: What?
>
> [Defense Counsel]: The offense possession of meth was a syringe that tested positive for methamphetamine.
>
> [The State]: Sounds like possession to me.
>
> THE COURT: Sound like prison, agree, [State]?
>
> (General laughter.)
>
> [The State]: Absolutely someone is going to go.

¶4 Five months later, at the plea and sentencing hearing, the circuit court accepted Church's guilty plea to possession of methamphetamine and convicted him. The court moved immediately to sentencing, with the State abiding by its agreement to recommend a six-year bifurcated sentence and defense counsel arguing for probation rather than prison.

¶5 During argument, defense counsel again referenced the facts of the case, noting that "one syringe that was loaded with methamphetamine [was found].… That's what the possession of meth is arising out of. Not multiple bindles. Not multiple syringes packaged for sale. It was one syringe. And given those facts, I don't believe probation unduly depreciates the seriousness of these offenses." Church also exercised his right of allocution, admitting his serious substance abuse problems. After considering the parties' arguments and the proper sentencing factors, the circuit court adopted the State's recommendation of a six-year bifurcated sentence, consecutive to any other sentence.

¶6 Church filed a postconviction motion seeking resentencing before a different judge. His motion alleged that the circuit court's statement at the July 24, 2019 hearing—"sound[s] like prison"—"and the follow through on that statement at [s]entencing overcomes the presumption of impartiality."

¶7 At a hearing on Church's motion, the circuit court found that the record did not support Church's claim that it had prejudged Church's sentence. According to the court, the comment was a "sarcastic statement" or a "joke," and those in the courtroom "recognized that it was a joke" and laughed "because everyone understood that it was not a promise or unequivocal designation that Mr. Church was going to prison." The court denied Church's motion. Church appeals.

## DISCUSSION

¶8 On appeal, Church renews his claim that the circuit court prejudged his sentence and was therefore biased at sentencing. As an initial matter, we note that the State argues that Church forfeited his judicial bias claim by not objecting to the court's statement either at the pretrial hearing when it occurred or during sentencing. Relying on *State v. Klapps*, 2021 WI App 5, ¶¶17, 25, 395 Wis. 2d 743, 954 N.W.2d 38 (2020),[2] the State argues that "Church tested the mind of the circuit court and waited until after he received his sentence to decide that an isolated comment in a pretrial hearing months prior demonstrated judicial bias.

---

[2] Church argues in his reply brief that the State's reliance on *State v. Klapps*, 2021 WI App 5, 395 Wis. 2d 743, 954 N.W.2d 38 (2020), is misplaced, as *Klapps* was decided after Church was sentenced on December 11, 2019. Although Church is correct that *Klapps* was decided after Church was sentenced, we disagree that the State's reliance was improper, as the propositions the State relied on in *Klapps* are long standing and well known under the forfeiture doctrine.

This is the type of testing of the circuit court that the forfeiture rule seeks to prevent." *See also State v. Marhal*, 172 Wis. 2d 491, 505, 493 N.W.2d 758 (Ct. App. 1992) ("A challenge to a judge's right to adjudicate a matter must be made as soon as the alleged infirmity is known and prior to the judge's decision on a contested matter."). Church disagrees, arguing that "[f]orfeiture should not be applied to a defendant's fundamental constitutional right to an impartial tribunal" and that "predetermined sentencing is a structural error."

¶9      We agree that the record is void of an objection to the circuit court's comment either at the pretrial hearing or at sentencing. However, we need not decide whether a timely objection is required to preserve a claim for appeal. Regardless of whether a party must contemporaneously object to preserve a claim of a due process violation based on judicial bias, we have the authority to disregard forfeiture arguments and address the claim on the merits. We choose to exercise that authority here. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and ... appellate courts have authority to ignore the [forfeiture].").

¶10     "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955); *see also State v. Herrmann*, 2015 WI 84, ¶25, 364 Wis. 2d 336, 867 N.W.2d 772 (plurality opinion). Thus, a criminal defendant has a due process right to an impartial judge. *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. "We presume a judge has acted fairly, impartially, and without bias; however, this presumption is rebuttable." *Id.* The burden falls on the party alleging judicial bias to demonstrate bias by a preponderance of the evidence. *Herrmann*, 364 Wis. 2d 336, ¶24. There are two tests to evaluate whether a defendant has rebutted the presumption: subjective and objective. *Goodson*, 320 Wis. 2d 166, ¶8.

¶11 In this case, Church claims that the circuit court was objectively biased, and we will therefore limit our discussion to that issue. "The United States Supreme Court has established that a serious risk of actual bias can objectively rise to the level of a due process violation." *Miller v. Carroll*, 2020 WI 56, ¶22, 392 Wis. 2d 49, 944 N.W.2d 542. A reviewing court must "assess whether 'under a realistic appraisal of psychological tendencies and human weakness,' the [court's] interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.*, ¶22 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009)). Thus, our supreme court recently clarified that an objective bias claim focuses on whether there is "a serious risk of actual bias—based on objective and reasonable perceptions." *Id.*, ¶24 (quoting *Caperton*, 556 U.S. at 884).[3] "'Due process requires an objective inquiry' into whether the circumstances 'would offer a possible temptation to the average … judge to … lead him [or her] not to hold the balance nice, clear and true.'" *Id.* (quoting *Caperton*, 556 U.S. at 885). "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Id.* (quoting *Caperton*,

---

[3] Our supreme court's recent decision in *Miller v. Carroll*, 2020 WI 56, ¶25 n.18, 392 Wis. 2d 49, 944 N.W.2d 542, highlights a disagreement within the development of judicial bias jurisprudence over the last two decades. One position "relies on the exact language used by the United States Supreme Court in" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). *Miller*, 392 Wis. 2d 49, ¶¶22, 24-25 & n.18 ("We ask whether there is 'a serious risk of actual bias—based on objective and reasonable perceptions.'" (citation omitted)). Conversely, the other side advocates for an "appearance of bias" framework that asks whether the "appearance of bias reveals a serious [or great] risk of actual bias." *Id.*, ¶¶41-42, 51 (A.W. Bradley, J., concurring); *see also State v. Herrmann*, 2015 WI 84, 364 Wis. 2d 336, 867 N.W.2d 772 (plurality opinion); *State v. Goodson*, 2009 WI App 107, ¶14, 320 Wis. 2d 166, 771 N.W.2d 385; *State v. Gudgeon*, 2006 WI App 143, ¶23, 295 Wis. 2d 189, 720 N.W.2d 114. Under either test, the standard that a party asserting judicial bias must demonstrate to overcome the presumption of impartiality is "a serious risk of actual bias." For that reason, going forward, we will use the language relied on by *Caperton* and *Miller*.

556 U.S. at 886-87). Whether the circuit court was objectively biased presents a question of law that this court reviews de novo. *Herrmann*, 364 Wis. 2d 336, ¶23.

¶12 Church argues that "[t]he circuit court's comment shows a great risk that it had determined what sentence it would impose in this case five months before the sentencing hearing." According to Church, the court's statement of "[s]ound[s] like prison" at the July 24, 2019 hearing and its resulting follow-through in imposing a prison sentence "overcomes the presumption of impartiality." He claims that "[a] reasonable person would conclude that the circuit court made a decision about Mr. Church's sentence months before the actual sentencing hearing and [would] question the court's impartiality." Church relies primarily on two cases in support of his position: *State v. Gudgeon*, 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114, and *Goodson*.

¶13 The State counters that the circuit court's isolated comment in this case does not rise to the level that would lead a reasonable person to believe that the court prejudged Church's sentence under *Gudgeon*, *Goodson*, or their progeny. The State argues that Church's reliance on *Goodson* and *Gudgeon* in support of his claim is unavailing as "Church fails to explain how the circuit court's isolated comment here rises to the level of the expressly desired outcome in *Gudgeon* or the unequivocal promise of a particular sentence in *Goodson*." For the reasons that follow, we agree that "based on objective and reasonable perceptions," including the nature of the court's statement and the context in which the statement was made, a reasonable person would not likely conclude that the court had prejudged Church's sentence. *See Miller*, 392 Wis. 2d 49, ¶24 (citation omitted). Church therefore fails to show a serious risk of actual bias.

¶14    In ***Gudgeon***, the defendant was convicted of operating a vehicle without the owner's consent and owed a substantial amount in restitution as a result. ***Gudgeon***, 295 Wis. 2d 189, ¶¶2-3. Gudgeon was ordered to pay the restitution as a condition of probation. When his probation was about to expire, Gudgeon's agent sent a letter to the circuit court requesting that the court convert the restitution obligation to a civil judgment rather than extend Gudgeon's supervision. ***Id.***, ¶3. The court replied in a handwritten note at the bottom of the letter, "No—I want his probation extended," and sent copies to the parties. ***Id.*** There, we agreed that the court's note did not establish actual bias. ***Id.***, ¶25. In assessing "[t]he appearance of partiality," however, we concluded that because the note "signifie[d] a personal desire on the court's part" to extend probation, a reasonable person would "discern a great risk that the [circuit] court ... had already made up its mind to extend probation long before the extension hearing took place." ***Id.***, ¶26.

¶15    Relying on our decision in ***Gudgeon***, in ***Goodson*** we also determined that there was an impermissible appearance of bias. In ***Goodson***, when the defendant was originally sentenced to prison, he was warned by the circuit court that if his extended supervision or probation was ever revoked, "you are going to come back here, and you are going to get the maximum." ***Goodson***, 320 Wis. 2d 166, ¶¶1-2. Goodson's extended supervision was later revoked, and, as promised, the court sentenced him to the maximum sentence. ***Id.***, ¶¶1, 5. At the reconfinement hearing, the court stated its decision was "pretty easy," explaining that its decision was based on "the agreement you and I had back at the time that you were sentenced." ***Id.***, ¶5.

¶16    We concluded that these facts constituted objective bias. We explained that "[a] reasonable person would conclude that a judge would intend to

keep such a promise—that the judge had made up his mind about Goodson's sentence before the reconfinement hearing." *Id.*, ¶13. Thus, the circuit court impermissibly prejudged the defendant's reconfinement sentence by "unequivocally promis[ing] to sentence Goodson to the maximum period of time if he violated his supervision rules." *Id.*

¶17    Similarly, in *State v. Lamb*, No. 2017AP1430-CR, unpublished slip op. ¶11 (WI App Sept. 25, 2018),[4] we also concluded that the defendant had demonstrated objective bias by showing a serious risk that the circuit court had prejudged his sentence. There, Lamb entered a no-contest plea to battery by a prisoner, and the circuit court was aware that the parties planned to recommend probation. *Id.*, ¶¶1, 14. At Lamb's sentencing hearing, prior to any argument by counsel or allocution by Lamb, the court inquired as to whether Lamb was making a knowing and intelligent decision to forgo a possible plea withdrawal request. *Id.*, ¶¶5, 14. Lamb stated that he was comfortable doing so in part because there was a "possibility of leaving today." *Id.*, ¶¶5, 14. The court immediately stated, "Not really," and it told the defendant not to harbor any "false hopes." *Id.* The court then repeatedly told the defendant that his release to probation was "probably not going to happen." *Id.* We concluded those statements demonstrated a serious risk that the judge "had already made up his mind about what kind of sentence Lamb would receive." *Id.*, ¶16.

¶18    Finally, in *Marcotte*, like in *Goodson*, the circuit court "warned Marcotte that if he was not successful in drug court, there would be 'no mercy'

---

[4] Pursuant to WIS. STAT. RULE 809.23(3)(b), authored, unpublished opinions issued on or after July 1, 2009, may be cited for their persuasive value.

when Marcotte returned to court for sentencing after revocation of his probation." *Marcotte*, 392 Wis. 2d 183, ¶5. Specifically, the court stated, "[D]ischarge from the [drug court] program means you get sentenced and you go to Dodge," meaning prison at Dodge Correctional Institution. *Id.*, ¶4. Relying on *Gudgeon*, *Goodson*, and *Lamb*, we concluded that the circuit court's remarks "gave rise to the appearance of bias evidencing a great risk of actual bias." *Marcotte*, 392 Wis. 2d 183, ¶¶20-24. While the State in that case attempted to distinguish *Goodson*, arguing that there was no promise of a specific term of incarceration, we disagreed. We explained, "[O]ur conclusion in *Goodson* that the court was objectively biased did not turn on the specificity of its promise. Instead, our decision was based on the fact that the court told the defendant what *would* happen if his extended supervision was revoked, rather than merely explaining what *could* happen." *Marcotte*, 392 Wis. 2d 183, ¶24.

¶19 Applying the legal principles discussed above to this case, we conclude that the nature of the circuit court's statements and the context in which they were made do not reveal a serious risk of actual bias. The common element in each of the cases discussed above was the court's express and unequivocal statement of either its desired outcome, as in *Gudgeon*, or an affirmation of what *would* happen, as in *Goodson*, *Lamb*, and *Marcotte*, that led to our conclusions that the court had prejudged the sentence. That common element is missing here.

¶20 We agree with the State that the circuit court's statement that "possession" of methamphetamine "[s]ound[s] like prison" was at most the court expressing an opinion that possession *could* lead to prison, not that the court had clearly made up its mind. *See Marcotte*, 392 Wis. 2d 183, ¶24. This comment was not a clear expression that the court wanted or had decided on a particular

outcome. Without more, the court's isolated comment would not lead a reasonable person to believe that the court had prejudged the sentence.

¶21 The context in which the circuit court's comment was made also informs our decision. The record reflects that the discussion followed the defense attorney's statement that "this case is regarding a syringe that tested positive for methamphetamine," perhaps foreshadowing counsel's later argument at sentencing that from the defense perspective, the circumstances of the case were not particularly aggravating. The State then responded, "Sounds like possession to me." The court's comment followed: "Sound[s] like prison, agree, [State]?" The exchange resulted in laughter and no objection by defense counsel. As the court stated at the postconviction motion hearing, the comment could appropriately be labeled as a "sarcastic statement" or a "joke," made at the expense of the State. Or, as argued by the State, the comment could be viewed as made at the expense of defense counsel. As the court noted, the resulting laughter suggested that others recognized the statement as a sarcastic comment or a joke.

¶22 Church responds that there is no exception to the objective bias test for humor or sarcasm. We agree that our case law does not provide an exception for humor where bias is concerned, but we recognize that our review is based on "objective and reasonable perceptions." *See* *Miller*, 392 Wis. 2d 49, ¶24 (citation omitted). As the State aptly noted, "[a] reasonable person would not view a statement that spurred laughter in the courtroom to be one that the circuit court meant as a genuine prejudgment of the outcome." Stated differently, under the circumstances here, there was no likelihood that anyone present, or this court on review, would understand that the court had decided to sentence Church to prison based only on this comment.

¶23 Finally, Church argues that even if the circuit court "intended the statement as humor or a sarcastic question," that fact "does not alter the appearance of bias that the statement created when the sentence five months later matches the statement." We are unpersuaded. As the State contends, "[a] judicial bias claim goes to the circuit court's ability to adjudicate a given case, not its discretion to impose a certain sentence." *See Marhal*, 172 Wis. 2d at 505. Thus, the statement itself should be the determining factor, not the ultimate outcome. Otherwise, any prison sentence ordered here, no matter how appropriate under the proper factors, would be considered evidence of bias.

¶24 In any event, the record of the sentencing hearing supports our conclusion that the circuit court's comment did not evidence a serious risk of actual bias. *See Gudgeon*, 295 Wis. 2d 189, ¶26 (explaining that "nothing in the transcript of the extension hearing would dispel" concerns regarding objective bias). Prior to sentencing Church, the court heard the parties' arguments. The State, arguing for prison, noted Church's significant criminal history and highlighted Church's failure both on probation and extended supervision. In arguing for probation, defense counsel positively cited Church's "steady work history," his status as a veteran, and that he is a father. Counsel also admitted that Church "suffers from a horrible, horrible substance use addiction," but he discussed Church's participation in "programming while in prison" and stated that he believes Church is "taking [his addiction] serious[ly] now." Church was allowed his right of allocution, during which he admitted his substance abuse issues and explained that he has "done a substantial amount of time, and the prison time doesn't seem to help."

¶25 The circuit court then considered proper sentencing factors, *see State v. Gallion*, 2004 WI 42, ¶¶39-46, 270 Wis. 2d 535, 678 N.W.2d 197, and

emphasized Church's "very significant and serious criminal history" that "indicates he's a danger to the community and that he has little regard for the consequences of his actions." The court ended its remarks by explaining, "I disagree that this is a probation case. Probation would certainly unduly depreciate the seriousness of the crime. It would not be consistent with the consideration of Church's character and criminal history. This is a prison case." At no time did the court reference the discussion of prison at the previous pretrial hearing, as the court did in *Goodson*, 320 Wis. 2d 166, ¶5. Nor did the court address its thoughts on whether this was a probation case versus a prison case at sentencing prior to reviewing the parties' submissions and hearing arguments, as did the court in *Lamb*, No. 2017AP1430-CR, ¶5. Our review of the record demonstrates that the court properly considered the parties' arguments and the proper sentencing factors in making its decision, rather than having prejudged the outcome.

¶26 We conclude, on this record and under the relevant case law, that Church has failed to overcome the presumption of impartiality. We note that the circuit court's comment was ill-advised and troubling to this court, and we caution against the use of humor under circumstances such as these in the future. However, Church has not demonstrated by a preponderance of the evidence that the court prejudged his sentence as in *Goodson*, *Gudgeon*, and their progeny, nor has he otherwise shown this to be an "exceptional case" with "extreme facts" that "rises to the level of a 'serious risk of actual bias.'" *See Miller*, 392 Wis. 2d 49, ¶24 (citation omitted). We therefore reject Church's claim of judicial bias.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

13