STATE of Wisconsin,
Plaintiff-Respondent,

v.

Brian K. GOODSON,
Defendant-Appellant.

Court of Appeals

*No. 2008AP2623–CR. Submitted on briefs March 24, 2009.
—Decided May 19, 2009.*

2009 WI App 107

(Also reported in 771 N.W.2d 385.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. When Brian Goodson was originally sentenced to prison, the court told him that if his extended supervision or probation was ever revoked, he would get the maximum sentence. Goodson's extended supervision was revoked. As promised, the court gave Goodson the maximum. By prejudging Goodson's reconfinement sentence, the court was objec-

tively biased. Therefore, Goodson is entitled to a new reconfinement sentence hearing.

## BACKGROUND

¶ 2. Goodson was convicted of two felony counts of possession of a short-barreled firearm and three misdemeanors: fourth-degree sexual assault, unlawful use of a telephone and disorderly conduct. On one of the firearm counts, the court sentenced Goodson to six years' imprisonment, with three years' initial confinement and three years' extended supervision. On the other firearm count and the sexual assault, it withheld sentence and placed Goodson on probation consecutive to the prison sentence. On the remaining two misdemeanors, it sentenced Goodson to ninety-day jail terms, concurrent with each other but consecutive to the prison sentence.[1] The court announced it was structuring the sentence like this to "[hang the] maximum penalty over [Goodson] . . . ." The court warned Goodson "[I]f you deviate one inch from these rules, and you may think I'm kidding, but I'm not, you will come back here, and you will be given the maximum, period. Do you understand that?" Goodson replied that he did. The court reiterated:

> Okay, and just so it's clear, if at some point in the next seven years . . . you do one thing away from what you're supposed to do . . . you make one mistake and that

---

[1] This was not the first sentencing hearing in this case. Goodson was first sentenced by another judge; however, we reversed and remanded for resentencing in *State v. Goodson*, No. 2004AP2913–CR, unpublished slip op. (WI App July 6, 2005), for reasons unrelated to this appeal. For simplicity's sake, we refer to the sentencing after remand as the initial sentencing.

probation agent provides me an opportunity to sentence you, I'm going to get this transcript, and I am going to read back to you the colloquy that we just had and your clear understanding . . . that's going to be what's given to you.

The court concluded, "[A]s I have told you, you do one deviation from these rules, and you are going to come back here, and you are going to get the maximum . . . ."

¶ 3. After completing the three-year term of confinement plus additional time for the jail sentence, Goodson was released. However, the next day, on the mistaken belief Goodson still needed to serve the jail sentence, the Department of Corrections took him into custody again and transferred him to the Outagamie County Jail. While there, he was charged with battery by a prisoner. Goodson's extended supervision was then revoked. Due to its mistake of taking Goodson into custody, the department recommended reconfinement of time served: 113 days.

¶ 4. The court concluded that "given the [department's] recommendation, . . . the very short amount of time that Mr. Goodson actually was in the community, [and] the fact that he hasn't been tried or convicted of this allegation," it would give him the benefit of the doubt. It then sentenced Goodson to time served. The court reminded Goodson of its earlier promise and stated, "[Y]ou're no longer going to get the benefit of the doubt . . . your continued violations will only be met with more severe consequences."

¶ 5. Five months later, Goodson's extended supervision was revoked due to numerous violations. At Goodson's reconfinement hearing, the court described its decision as "pretty easy" and ordered Goodson reconfined for the maximum period of time available. It explained to Goodson this sentence was appropriate

"not because that's the sentence I'm giving you today, [but] because that's the agreement you and I had back at the time that you were sentenced." The court reminded Goodson of its warning that "you would sentence yourself based . . . upon your actions at the time you left prison. And if you became a law-abiding, good citizen, then you would never have been here . . . but if you screwed up . . . then you'd be given the maximum."

¶ 6. Goodson filed a motion for postconviction relief, arguing that he had been deprived of the right to an impartial judge because the court prejudged the reconfinement sentence. The circuit court denied his motion. It asserted it had not in fact prejudged the sentence, but simply meant to "scare [Goodson] into following the rules . . . as well as . . . make sure he understood everything that he potentially had coming." Goodson appeals.

## DISCUSSION

■■

¶ 7. This appeal requires us to determine whether Goodson was sentenced by an impartial judge. Whether a circuit court's partiality can be questioned is a matter of law that we review independently. *State v. Rochelt*, 165 Wis. 2d 373, 379, 477 N.W.2d 659 (Ct. App. 1991). Further, the court's duty at a reconfinement hearing is the same as it is at the original sentencing. *State v. Wegner*, 2000 WI App 231, ¶ 7 n.1, 239 Wis. 2d 96, 619 N.W.2d 289; *see State v. Brown*, 2006 WI 131, ¶ 20, 298 Wis. 2d 37, 725 N.W.2d 262 (reconfinement hearing akin to a sentencing hearing). Therefore, we apply the same standards to our review of a reconfinement hearing as we would a sentencing hearing.

¶ 8. The right to an impartial judge is fundamental to our notion of due process. *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005); *State v. Washington*, 83 Wis. 2d 808, 833, 266 N.W.2d 597 (1978). We presume a judge has acted fairly, impartially, and without bias; however, this presumption is rebuttable. *State v. Gudgeon*, 2006 WI App 143, ¶ 20, 295 Wis. 2d 189, 720 N.W.2d 114. When evaluating whether a defendant has rebutted the presumption in favor of the court's impartiality, we generally apply two tests, one subjective and one objective. *Rochelt*, 165 Wis. 2d at 378. Goodson concedes he cannot show the court was subjectively biased. Therefore, we need only determine whether the court was objectively biased.

¶ 9. Objective bias can exist in two situations. The first is where there is the appearance of bias, *Gudgeon*, 295 Wis. 2d 189, ¶¶ 23–24. "[T]he appearance of bias offends constitutional due process principles whenever a reasonable person—taking into consideration human psychological tendencies and weaknesses—concludes that the average judge could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." *Id.*, ¶ 24 (citation omitted). Thus, the appearance of partiality constitutes objective bias when a reasonable person could question the court's impartiality based on the court's statements. *Id.*, ¶ 26; *Rochelt*, 165 Wis. 2d at 378. The second form of objective bias occurs where "there are objective facts demonstrating . . . the trial judge in fact treated [the defendant] unfairly." *State v. McBride*, 187 Wis. 2d 409, 416, 523 N.W.2d 106 (Ct. App. 1994) (citation and internal quotation omitted). Goodson argues both forms of objective bias are present here.

173

*Appearance of Bias*

¶ 10. We agree with Goodson that a reasonable person would interpret the court's statements to mean it made up its mind before the reconfinement hearing. Our decision in *Gudgeon* guides our conclusion. Gudgeon was convicted of operating a vehicle without the owner's consent for using another person's motorcycle to flee from police. Because the motorcycle was destroyed during the chase, the court ordered Gudgeon to pay the owner restitution as a condition of his probation. Shortly before the probation was about to end, Gudgeon's agent notified the court that Gudgeon had not paid the bulk of the restitution. The agent proposed that instead of extending Gudgeon's probation, the court convert the restitution obligation to a civil judgment. The judge replied, "No—I want his probation extended . . . ." *Gudgeon*, 295 Wis. 2d 189, ¶¶ 2–3. At a subsequent hearing, the judge extended Gudgeon's probation.

¶ 11. On appeal, Gudgeon argued the court had prejudged the outcome. We concluded the court was objectively biased because the judge's note created an appearance of partiality. We stated that "a reasonable person familiar with human nature knows that average individuals sitting as judges would probably follow their inclination to rule consistently with . . . their personal desires." *Id.*, ¶ 26.

¶ 12. The same analysis applies here. At the initial sentencing, the court assured Goodson it was "not kidding" about its commitment to impose the maximum sentence if Goodson violated his supervision rules. Later in the hearing, the court repeated the warning: "[A]s I have told you, you do one deviation

from these rules, and you are going to come back here, and you are going to get the maximum." The court then reminded Goodson yet again at the first reconfinement hearing what would happen if he violated the rules.

¶ 13. Here, the court unequivocally promised to sentence Goodson to the maximum period of time if he violated his supervision rules. A reasonable person would conclude that a judge would intend to keep such a promise—that the judge had made up his mind about Goodson's sentence before the reconfinement hearing. This appearance constitutes objective bias.

### *Actual Bias*

¶ 14. We do not ordinarily discuss another basis for our ruling. We do so here because we have previously observed that while some cases hold apparent bias is sufficient to show objective bias, other authority holds actual bias is required. *Gudgeon*, 295 Wis. 2d 189, ¶ 22. In *Gudgeon*, we concluded this case law could be harmonized because the cases holding the appearance of partiality was sufficient "seemed to do so only where the apparent bias revealed a great risk of actual bias." *Id.*, ¶ 23. Thus, actual bias—either its presence, or the great risk of it—is the underlying concern of objective bias analysis.

¶ 15. Goodson contends the court was actually biased because the record demonstrates that the judge in fact had made up his mind before the reconfinement hearing. The State responds that were the court actually biased, it would have imposed the maximum at the hearing following Goodson's battery by a prisoner charge. Further, it contends the court's discussion of Goodson's dangerousness and failure to comply with

the terms of his extended supervision indicates the court properly based its decision on applicable sentencing factors rather than a promise.

¶ 16. The problem with the State's argument is that it overlooks the court's critical statements at the reconfinement hearing. The court began by noting its decision was "pretty easy." The court said the maximum was appropriate "not because that's the sentence I'm giving you today, [but] because that's the agreement you and I had back at the time you were sentenced." There could not be a more explicit statement confirming that the sentence was predecided. This is definitive evidence of actual bias.

## CONCLUSION

¶ 17. A court may certainly tell a defendant what *could* happen if his or her extended supervision is revoked. But telling a defendant what *will* happen imperils the defendant's due process right to an impartial judge at a reconfinement hearing. Our jurisprudence eschews the notion that a court may determine a sentence without scrutinizing individual circumstances. *See McCleary v. State*, 49 Wis. 2d 263, 271, 182 N.W.2d 512 (1971). This prohibition is not implicated when a judge "merely express[es] a general opinion regarding a law at issue in a case before him or her." *McCaughtry*, 398 F.3d at 962. But "when a judge has prejudged . . . the outcome," the decision maker cannot render a decision that comports with due process. *Id.*

¶ 18. We do not doubt the circuit court's good intentions to motivate Goodson to comply with his supervision conditions. However, the court's unequivocal promise to impose the maximum sentence and its

subsequent follow-through on that promise violated Goodson's due process right to be sentenced by an impartial judge. He is therefore entitled to a new reconfinement hearing before a different judge.

*By the Court.*—Order reversed and cause remanded with directions.