PER CURIAM.
¶ 1 Brenda L. Moritz appeals from a judgment of conviction, entered after sentencing following the revocation of her probation, and from an order denying her postconviction motion seeking resentencing before a new judge. We conclude that Moritz has not shown that the circuit court was objectively biased. We affirm.
BACKGROUND
¶ 2 In 2009, the State charged Moritz with six counts of felony failure to pay child support, as a repeater. Pursuant to a plea agreement, Moritz pled no contest to three of the counts in exchange for dismissal of the remaining three counts and all of the repeater enhancers. The parties agreed to jointly recommend five years of probation and conditional jail time to be used at the agent's discretion if Moritz failed to keep up with her support payments. The circuit court accepted the joint recommendation and withheld sentence in favor of a five-year term of probation. In response to one of the father's expressed confusion about the conditional jail time, the court explained that the agent had the discretion to place Moritz in jail if she was not making her payments. It added:
I'm not saying the agent has to do that. The agent may look at this young lady and say that is all fine and well, but I-the discretion and I don't quite frankly intend to exercise that discretion. I want to revoke her and send her to prison. If her behavior becomes so [egregious] in the mind of the agent, this is just a waste of time and resources [ ] putting her in the Fond du Lac County Jail. If in that mindset there is rational justification for those-entitled to a revocation hearing and she can walk those paths. There is-always has to be an alternative to revocation that is considered here. It's an analysis you have go through and so it's easier said than done. Just don't slam the door and too bad, so sorry. It doesn't work that way. All right. So she's entitled to her rights and her day in court on the revocation side. All right. But in the end when she does come back on the revocation, you can safely assume the door is closed. At that point then she's looking at probably the prison system.
¶ 3 Moritz's probation was revoked and she appeared for sentencing in 2016. At the start of the hearing, the court explained that it had obtained Moritz's records from the county child support agency to assess how much she had paid and still owed. It provided copies to the parties before the hearing. Moritz's attorney said she had reviewed the records with Moritz the day before and had no objection to the court's using the records for sentencing. The records showed that Moritz had paid $1334.95 from March 2010 until the date of sentencing, and that she should have paid $54,388.91. This was different than the information in the Department of Corrections' (DOC) revocation summary, which showed that Moritz owed $81,628.40.
¶ 4 The circuit court imposed the maximum available sentence; an aggregate bifurcated sentence of four and one-half years of initial confinement followed by six years of extended supervision.[1] In explaining its sentence, the circuit court said that it considered nonsupport "a very serious issue" because of the effects it can have on the unsupported children. The court said that in its world, nonsupport "almost ranks next to homicides" and that it had "zero tolerance for it." The court determined that Moritz had failed on probation, and "did jack" and "absolutely nothing" to address her support obligations.
¶ 5 Moritz filed a postconviction motion seeking resentencing in front of a new judge on the ground that the circuit court was objectively biased. She alleged that the court's comments at the original and post-revocation sentencing hearings showed that the court predetermined it would send her to prison if the DOC revoked her probation, and that its acquisition of her child support records added to the appearance of bias. The circuit court denied the postconviction motion, determining that the record did not demonstrate bias. Moritz appeals.
DISCUSSION
¶ 6 Moritz contends that the circuit court's statements and conduct led to the appearance of partiality, a form of objective bias which occurs when "a reasonable person could question the court's impartiality based on the court's statements." State v. Goodson , 2009 WI App 107, ¶ 9, 320 Wis. 2d 166, 771 N.W.2d 385. The law presumes that a judge acted "fairly, impartially, and without prejudice." State v. Herrmann , 2015 WI 84, ¶ 3, 364 Wis. 2d 336, 867 N.W.2d 772. The party asserting bias carries the burden to rebut this presumption by a preponderance of the evidence. Id. , ¶ 24. Whether a judge was objectively biased is a question of law we review independently. Id ., ¶ 23.
¶ 7 Moritz argues that the circuit court's comments at her original sentencing hearing show that the court prejudged how it would sentence her upon revocation. See Goodson , 320 Wis. 2d 166, ¶ 12-13 (finding court's unequivocal promise that it would impose the maximum sentence if Goodson's supervision was later revoked constituted objective bias; a reasonable person would conclude that the judge intended to keep such a promise and had made up its mind about Goodson's post-revocation sentence before the hearing). In particular, she points to the circuit court's statements that if probation was revoked, the "door is closed," and Moritz would be "looking at probably the prison sentence," along with the following comment: "In my opinion [if] somebody doesn't pay child support, I will gladly pay to put them in prison and they can stay there and warehouse." According to Moritz, these statements are on par with those made by the circuit court in Goodson .
¶ 8 We disagree. The circuit court never promised to send Moritz to prison for any amount of time, let alone for the maximum sentence. The court indicated that if revoked, Moritz was "probably" looking at some time in prison. Earlier, after impressing on Moritz how serious it deemed the offense, the court clarified "I'm not saying what would happen if you get revoked." Further, its comment about the "door being closed" was made in the context of explaining the probation and revocation processes to one of the victims.
¶ 9 Moritz acknowledges that the circuit court used the term "probably" but asserts that its tenor changed, pointing to the comment, "I want to revoke her and send her to prison." The court's remarks are reprinted above; it made this statement while it was explaining the role of the probation agent and how a hypothetical agent might react to Moritz's failure to pay support while on supervision. The court was speaking about what a hypothetical agent might want, not about what the court wanted.
¶ 10 To the extent Moritz contends that the circuit court's harsh remarks at her post-revocation sentencing rise to the level of objective bias, we disagree. The court certainly used strong language in discussing the severity of the offense, for example, likening it to homicide and stating, "[I]f I could sentence you to 15 years in prison I would do that." The court was entitled, in the exercise of its discretion, to impose the maximum sentence and to explain that it considered nonsupport a serious crime. After all, the court did impose probation the first time around. The court used strong language then, too, and Moritz stated at that time that she "agreed" with the court's statements and did not consider them "over the top" or "overbearing." Likewise, the court's statement to Moritz that it hoped she was not successful in the Substance Abuse Program (SAP) does not evince actual bias. After all, as Moritz acknowledges, the court did find her eligible for the SAP despite having the discretion to find her ineligible.
¶ 11 Moritz also contends that the circuit court's conduct in directly obtaining her child support records furthers the appearance of bias. Moritz argues that by conducting its own fact-finding investigation, the circuit court moved beyond the scope of a neutral decision maker into the role of a partisan investigator. The State agrees that the circuit court's ex parte fact gathering was improper, but argues that it does not show bias.
¶ 12 We agree with the State that though the circuit court should have sought the parties' assistance in obtaining Moritz's child support records, its conduct does not create the appearance of bias. In this instance, the information sought was indisputably relevant to the issue of Moritz's sentence, and nothing suggests the court acquired the records out of malice, in order to justify the maximum sentence.[2] Further, the circuit court openly disclosed at the start of the post-revocation sentencing hearing that it had obtained Moritz's child support records to assess how much she had paid and still owed. It provided copies to the parties in advance of the hearing-Moritz's attorney said she had reviewed the records with Moritz the day before-and defense counsel stated there was no objection to the court's using the records for sentencing. That the court acted openly and provided the parties with notice and an opportunity to be heard and that trial counsel voiced no objection, dispels the notion that a reasonable person would doubt the court's impartiality.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The court imposed three consecutive maximum sentences, each comprising one and one-half years' initial confinement and two years' extended supervision.

In fact, as the State points out, the child support records were apparently more favorable to Moritz than the DOC records.