**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 8, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP1902**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021JV43

**IN COURT OF APPEALS**
**DISTRICT II**

IN THE INTEREST OF L.R.J., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

L.R.J.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed in part; reversed in part and cause remanded.*

¶1    GUNDRUM, P.J.[1]  L.R.J., hereinafter referred to by the pseudonym Lincoln, appeals from an order of the circuit court imposing stayed delinquency dispositions and from an order denying postdisposition relief without a hearing. Lincoln contends we must reverse the court's order lifting the stayed serious juvenile offender (SJO) disposition because the judge lacked impartiality and we must reverse the order lifting the stayed sex offender registration requirement because the State failed to give him notice as required by WIS. STAT. § 938.34(16) that it was seeking an order lifting the stay.

## *Background*

¶2    In September 2022, following a court trial, the circuit court adjudicated Lincoln delinquent as a result of four incidences of first-degree sexual assault of his younger brother, in violation of WIS. STAT. § 948.02(1).  Specifically, when he was thirteen to fourteen years old, in 2020 to 2021, Lincoln made his then five- to six-year-old brother perform oral sex on him on three separate occasions, and Lincoln anally penetrated his brother on one occasion.  The court held a dispositional hearing on December 2, 2022.  In advance of the hearing, Lincoln filed a motion to stay sex offender registration.

¶3    At the hearing, the State asked the circuit court to order Lincoln to comply with sex offender registration and place him in the SJO program, which requires, inter alia, that the juvenile be adjudicated delinquent for committing a violation of WIS. STAT. § 948.02(1) and that the only appropriate placement is in a juvenile correctional facility.  *See* WIS. STAT. § 938.34(4h).  The State pointed out that the dispositional report for Lincoln identified him as "a high risk to re-offend,"

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

noted his history of violence, and referred to a prior adjudication for a violent offense and a recent incident in which "he became violent with his grandfather where police needed to respond." The State added that the report indicated Lincoln "has been removed and returned home from placements because he is noncompliant with rules," "he refuses to complete schoolwork … and he's barely attending school and if he is, he's hiding in the bathroom," he "has a history and continues to use drug[s] and alcohol," and his treatment provider recently dropped him for failing to participate. The State asked that the court order Lincoln into the SJO program because it "can provide supervision that is more restrictive than ordinary supervision in the community … [and Lincoln] needs that structure."

¶4 Dominic Lang, a representative from Walworth County Health and Human Services, requested that Lincoln "remain with his guardian who is his grandmother" because "kids always do better when they're actually in the home." Lang noted that Lincoln himself endured much physical abuse from his mother during his lifetime. The circuit court interrupted to state,

> I don't disagree with that…. Here's my question for you then. How do I get him to go to school every day and stay in school in his classes not lurking behind the building?
>
> .…
>
> It's not happening. Every time he comes back into that home, he just goes down into that basement and does whatever he wants and they can't do anything with him. How do we change that because he has got to get his high school degree. He has got to stop using.

Lang stated, "I know it's just one week, but [Lincoln] had good attendance last week," though Lang acknowledged "[i]t [was] not every day."

¶5 Lincoln's grandmother/guardian spoke next. The circuit court asked her numerous questions to determine whether she was able to impose consequences

on Lincoln if he failed to follow her rules at home. The court stated at one point that it was a "very good start" that Lincoln was no longer sleeping in the basement with his Xbox also down there.

¶6 Counsel for Lincoln spoke of Lincoln's very challenging upbringing, with a father who does not want to be a part of his life and a mother who is sometimes more harmful than helpful when she is involved in his life. Counsel spoke of him in "foster homes, group homes, [and] other placements that he was placed in because he was a victim." She explained that he is attempting to get a job, which may help to motivate him to go to school, and he "is cooperative in therapy and treatment" and has "opened up." She explained that "for all of the issues that go on in [his grandmother's] home … it's home. It's a place where he feels loved, it's a place that he feels safe and that's been too far between in [Lincoln's] life."

¶7 Counsel stated that "learning appropriate [sexual] boundaries is something you usually learn from your parents," but Lincoln has not had proper parental support. Related to sex offender registration, counsel asserted that "it's rare that you find a case where a juvenile should be set on the registry," representing that "[t]hat is the opinion of experts in the field." She claimed there is "not a need for public safety here like there is with adult sex offenders. Adult sex offenders, studies have shown, are more likely to recidivate sexually. Juvenile sex offenders that is not the case." Counsel noted that "[t]here hasn't been any allegations of sexual assault to any one other than his little brother." She asked that sex offender registration be stayed to allow Lincoln to participate in treatment and learn appropriate boundaries.

> This is not a young man we need to put on the registry for purposes of community safety and the fact is is that if [Lincoln] doesn't successfully complete his treatment and doesn't successfully complete his supervision, that stay can

be lifted at any time by this court if there's a concern that
sexual recidivism is likely. That's not the case here.

Counsel asked that Lincoln "have these opportunities to continue the treatment that he's already begun, to continue living with his grandmother and to see if we can make those baby steps because unfortunately we can't fix in three months what it took 13 years to create."

¶8      Counsel expressed, "I think [Lincoln] right now is realizing how important school is to this court and that he needs to be on top of that if he's going to have a future …." Counsel asked the court to stay the SJO disposition and sex offender registration and give Lincoln "things to work for for his own future."

¶9      The circuit court recognized Lincoln's serious behavior of a criminal, violent and sexual nature, but added that he "might be where he is and how he is today through no fault of his own," noting the very negative impact of the negative and/or absent relationships with his mother and father. It found that Lincoln's sexual assaults of his younger brother were sexually motivated, and found him to be "a safety risk," having "chosen … to act out against someone younger and more vulnerable than him." It expressed concern that "every time he's home in grandma's house whether his mother's there or not, he shows no interest in doing anything but sitting in the basement and playing video games[.] [He has] no interest in turning [his life] around because … it's just easier to give up."

¶10      The circuit court expressed that it

> has to be concerned about the community's safety now and
> in the future and the dispositional report is replete with his
> unwillingness to do anything positive or to try….
>
>      Not going to school, not working. Glad to hear you have
> [a job] interview …. I hope you're able to get employed
> because I think that might help get you outside of the house.
> I think … part of the problem here is … [n]o positive social

interaction 'cuz you're not getting it at school 'cuz you don't go.

¶11     The circuit court stated that "the AODA, the alcohol use, the huffing, [is] very concerning to me.... [T]he THC use and then obviously there's serious mental health concerns here."

¶12     The circuit court stated:

> The absolute disrespect to your grandmother and grandfather when they are the ones who are trying to give you a home to live in, part of what I'm going to order today is that has to change.... It also means grandmother [who was present in court] has to stand strong, establish what the rules are, establish what the consequences are and stick to 'em. If that means taking the phone for however long is necessary to get him into compliance with what's expected, so be it.... If that means taking the video gaming systems out of the basement and not letting him play for awhile, so be it....
>
> You have to establish those consequences because allowing him to sit in the basement and do nothing but eat and play video games and not go to school is not acceptable.... I know the baby steps idea thing. I understand part of that, but it also just has to be this is it. These are the rules. These are the consequences. We stand by them. You're old enough, [Lincoln], and you're smart enough to do that.
>
> There's been a lot of enabling of the laziness here to be quite honest in not imposing and sticking to consequences ....

¶13     The circuit court continued:

> [O]bviously this is a really difficult one because you have committed serious acts of sexual crimes against your little brother and you know that. In terms of the State's argument for why SJO under [WIS. STAT. §] 938.34(4h), while the criteria are met and wh[ile] it's appropriate, I agree with all of the arguments that you've made. But then on the other hand for the reasons I've already stated, I also know that there are extenuating circumstances here in terms of what [Lincoln's] history is. But I'm not willing to just put him on supervision and we'll see how it goes.

This is what I'm ordering. I am finding under [WIS. STAT. §] 938.34(4h) that the criteria for the serious juvenile offender program are met ... [including] that the only other disposition appropriate is [placement in a] juvenile correctional [facility] under (4m) …. I do think based on the nature of the crimes that he's a danger to the public but I think that [the] serious juvenile offender program is appropriate.

That being said, under [WIS. STAT. §] 938.34(16), the court can stay that order. The court can stay the order but if he violates any of the conditions of his supervision, it means the stay is lifted and he goes. So, [Lincoln], what that means is that it's up to you. I am giving you your chance.

[LINCOLN]: Yes, your Honor.

THE COURT: But I think you know how incredibly serious I am about everything I expect you to do. You will go to school every day, every class. You will not be tardy. You will do your work. You will get passing grades. I know you're capable of A's. I'm requiring passing grades. Show me more. That means if you don't go to school, it is a violation of your supervision and you'll come back into court and I'll lift the stay. It's not a choice any more. Laziness is not a choice. This is your future. You don't get to hide in the bathroom, you don't get to hide behind the building. You go to every class on time and you do your homework. Are you willing to do that?

[LINCOLN]: Yes, your Honor.

THE COURT: Grandma, are you or grandpa able to get him there for school every day?

[GRANDMA]: Yes.

THE COURT: … So the family is making the commitment to you, too. What are your other conditions of your supervision? Well, everything the State said. No new referrals. Meaning no more criminal activity. No drinking. No drugs of any kind including huffing. No drug paraphernalia. No contact with [victim/Lincoln's younger brother] unless it's agreed to by your therapist, his therapist, his caregivers and HHS. Continue with all of your counseling including your sex offender counseling until you successfully complete it….

….

7

I'm going to order a psychosexual evaluation to be completed ….

….

So he has to comply with the treatment. All of the evaluations. I've already said that you have to do everything that school expects of you and you have to behave in school. Follow all of their rules. Part of this is grandma, like you heard me say, you establish what your home rules are. Number 1, you don't get to live like a pig in your bedroom, right? So grandma is going to make a list of rules that you have to comply with and this is a condition of his supervision, grandma.

I want a list of the things that are expected to act like [sic] in the home. I would expect them to be things like keep your room decent, go to school. If there are chores that you should be doing around the house, to do your part in the house whether it's doing the Sunday cleaning or doing dishes after dinner, whatever. That's part of investing in family life. And, grandma, like I said, I expect you to establish consequences for disrespect, for not following the rules at home and I expect you to enforce them appropriately.

I know that the easier thing to do is just to let it go, but [Lincoln] doesn't get to be lazy any more and, to be frank, neither do you. You and grandpa have to enforce these rules. The court has entrusted you as guardians of [Lincoln] to do what's right and I'm relying on that and if it's not going to happen, then we're going to be back in court. I respect what you've said about trying to make it work, but he's heard me now as to what's expected.

In terms of the sex offender registry, under [WIS. STAT. §] 938.34(15m) the court is to consider was the crime or crimes here sexually motivated. I've already made that finding. Is it in the public interests to require reporting? It's not really a question for me as to whether it's in the public's interest to require reporting. I think it is. Whenever someone is convicted or adjudicated in this case of a serious multiple[-]time sex crime against another, then it's in the public's interest that that be reported so that the public can protect itself. So I do think the requirements for [§] 938.34(15m) are met.

Under [WIS. STAT. §] 301.45 the court can stay that order. In looking at the seriousness of the offenses, again, I think they are serious but also … [h]e was 14. Recognizing his

history of being a victim.  I don't know if sexual offenses or not.…  [B]ut a victim of physical abuse and serious neglect and emotional harm from his growing up and I'm just not sure about whether or not he would commit other violations in the future.

So what I'm going to do, just like with staying the serious juvenile offender, is that I'm going to stay it for the period of supervision.  We will have a hearing at the end of his supervision for the court to determine whether or not the stay should be continued or whether it should be lifted.  So that hearing will be at the end of his supervision or if the stay of the SJO is lifted, I'd be considering it then.

I am going to require HHS to file a memo with the court once a month as to how he's doing.

….

… I want an update on how he is at home, school, what everything is that's going on in his life and I want the school information….

….

My point being I don't want him to be getting away with things.  He has to follow the rules.  [Lincoln], do you have any questions about this?

[LINCOLN]:  No, your Honor.

THE COURT:  Are you willing to take on this challenge?

[LINCOLN]:  Yes, your honor.

THE COURT:  Can you do it?

[LINCOLN]:  Yes, your honor.

THE COURT:  Basically all I expect you to do is go to school, do your homework, be respectful of where you live, behave yourself, don't use any drugs or alcohol and go to treatment.  All of those things are going to be good for you.  They are going to be healthy for you and I think you'll see that once you get into that kind of routine.  If I didn't think that you were capable of so much more than you are right now, I'd just send you but I do think you're capable of it so prove me right.

[LINCOLN]:  Yes, your honor.

¶14     The court set a review hearing for two weeks prior to the expiration of the supervision order to consider the sex offender registration. In regards to the monthly memos Lang would be sending, the court stated: "If there's anything in those memos that causes either party concern, you let my clerk know. We [will] put it on for a hearing, okay?" The hearing continued:

> MR. LANG: … So SJO at the review hearing almost a year from now, could that be imposed then?
>
> [COUNSEL FOR LINCOLN]: Yes.
>
> THE COURT: Yes.
>
> ….
>
> THE COURT: Up until the day his supervision ends it's a possibility.
>
> ….
>
> THE COURT: … [If things are] not going well, we're going to be having a hearing long before that.
>
> MR. LANG: I hear you, your Honor.
>
> THE COURT: I'm just setting the review for the registry question because if everything is going well, that will be the first time I'll see [Lincoln] again. So for that review hearing, I would need the evaluation, I would need to know lots of things and I'm sure both sides will present them to me as to whether or not the stay should be permanent of the registry [sic]. But the SJO is hanging over his head until supervision ends the day of….
>
> .…
>
> THE COURT: We do need to do sanctions warnings…. Although the reality is if it reaches the level of needing a sanction—
>
> [COUNSEL FOR LINCOLN]: You're going SJO.
>
> THE COURT: —you're going SJO. So if you violate your order, the court could order one or more of the following sanctions: [j]uvenile detention or the juvenile portion of a county jail for up to ten days with educational

10

> services; put you in non-secure custody for up to ten days with educational services; … order you to perform 25 hours without pay in a supervised work program or other community service work.

The circuit court entered a one-year dispositional order placing Lincoln in the SJO program and requiring sex offender registration but stayed both of these dispositions and ordered him to continue living with his grandmother.

¶15 In his first monthly report, filed December 27, 2022, Lang reported several instances of Lincoln skipping school, showing up late for school, and/or attending school only after his grandmother, grandfather, or Lang expended extraordinary effort in the two weeks between the December 2 hearing and the beginning of winter break on December 16. The report also indicated Lincoln tried to use going to school as a way to "manipulate his grandmother to buy him a Delta 8 THC cart," but the grandmother "would not give in so [Lincoln] did not go to school." The report further indicated that Lang observed "a nicotine vape device on [Lincoln's] dresser" and when Lang took the device, Lincoln became upset and started swearing. Additionally, Lincoln's grandfather reported to Lang that Lincoln had taken twenty-seven dollars from his grandmother "on the Cash App." The grandmother also told Lang that Lincoln "broke his X-box and some other property as he was trying to manipulate his grandmother to buy him a Delta 8 THC cart" and that Lincoln "told her if he did not get a Delta 8 THC cart he would start huffing aerosol cans again." The report also included a note from Lincoln's therapist indicating Lincoln had made all of his sex offender treatment appointments, was "willing to work with" the therapist, and was "showing signs of progress."

¶16 Lang's report prompted the State to request "that the stay on the Serious Juvenile Offender program be lifted" due to the report indicating Lincoln had "committed several violations of his dispositional order … cover[ing] at least

three of his conditions of supervision." The circuit court held a hearing on the motion on February 3, 2023.

¶17    At the February 3 hearing, the State argued for an order lifting the stay of the SJO disposition because Lincoln

> had committed several violations of his supervision in the short amount of time since his disposition hearing on December 2nd. These violations covered at least three conditions of the supervision. He refused to go to school, he tested positive for THC, he was causing property damage and he was manipulating his grandmother to buy him drugs.
>
> Since my [written] request, [Lincoln] has continued to violate his supervision. I'll note he did receive a new petition which another prosecutor in my office filed. I don't know how that case will conclude so I'm not arguing that [Lincoln] be sent to SJO simply because he got a new petition, but I am asking the court to look at the facts underlying the petition. On January 26th, he again refused to wake up for school. He again caused property damage in the home. He even called his grandfather a snitch and threatened to kill him. I'll note that he has been compliant with the sex offender treatment but that treatment is not the sole purpose of his supervision. If it were, then that would have been the only condition of his supervision and it's not.
>
> This court was very clear with [Lincoln] back at the time of disposition if he stepped out of line; if we were here for a sanction hearing, then he would be sent to the SJO program and he's had numerous violations that would be a basis for a sanction. [Lincoln] needs the structure that the SJO program can provide and as a result I am asking that the court lift it.

¶18    Lang expressed that the Department wanted Lincoln to remain "home" and continue treatment with his sex offender therapist who was "probably the first therapist he's ever had a connection with." Lang was concerned "if he goes SJO, that he's going to lose that trust and he might not be able to gain trust with another therapist through this program." Lang stated that it was "[m]aybe the first time since I've case managed him" that he heard remorse and sincerity out of

12

Lincoln. He again reiterated that the Department wanted Lincoln "home" and did not want Lincoln "to go to like a Lincoln Hills for awhile because of the trauma that he endured from his mother." Lang stated that

> some of this sexual behavior from [Lincoln] stems back to when he was a younger kid that was kind of influenced on by the mother. And then since he's been in therapy, there has been an allegation that he was sexually assaulted while in a foster home in Grant County years ago.… He was probably sexually assaulted by a foster parent and that's our fault. We might have influenced some of this behavior.

¶19 Counsel for Lincoln noted that Lincoln essentially "grew up in the system" as

> a CHIPS kid who was out-of-home for the majority of his existence and the Department has worked with him for many, many years trying to find a therapist or someone that he would connect with; that he would be able to talk through his trauma with who he would actually be able to learn from. It took us this long. Almost … 16 years for us to find the type of therapist that can work with [Lincoln] and at this point I'm very worried about losing that.
>
> I understand the concern here with the acting out behaviors and the addiction. Clearly it's a problem. However, I do think that unfortunately we are in a situation where we have a young man who's starting to deal with trauma; who's starting to deal with the root of his PTSD and unfortunately part of that is—in my experience has been that we do end up with some acting out behaviors and trauma response behaviors when we're finally starting to open up these cans of worms that have been eating him up … inside for his entire life.
>
> ….
>
> I did speak with [Lincoln] earlier today and I would agree with Mr. Lang's assessment. I'm actually hearing emotion from him. He's talking about things that he's never talked about with me or anyone else before so I'm very glad to hear that he does have his connection with this therapist. I don't want us to lose that and I do believe that much of the behavior that we're seeing here is a response to him actually disclosing his trauma and talking about these things and that he's kept bottled up for so long.

13

¶20    Lincoln's mother spoke, telling the circuit court that she "wasn't able to be successful to take care of [Lincoln] in the manner that he deserved…. It's [a] negative environment…. [A]nd I put that on my kids." She stated that Lincoln deserves the chance to continue working with his therapist, and explained how she is working with a therapist herself and it sometimes causes her to act out.

¶21    The circuit court indicated it had read a letter that Lincoln had sent to the court; Lincoln declined to make any further statement.

¶22    The circuit court then spoke.

> I have no doubt that [Lincoln] has suffered as a child and as a teenager at the hands of others. First and foremost, from his mother and his lack of a father and then in the system and that's incredibly gut wrenching …. The problem is, [Lincoln], is that this court is tasked with looking at the total picture; not just what your needs are any more, but the way you act out toward others. Whether it can be explained due to your own history of trauma or not, it still puts others at risk and that's something that I have to consider *when I decide what to do here*.
>
> There have been lesser restrictive placements over the years. Since the time of the original TPC hearings back in May of '21 for the allegations that all came to light back then, your sexual assaults of your youngest brother, your mother's continued abuse of all three of you, the neglect, the everything when it was coming to light back then, since then almost two years ago you've had stints in secure, you've been in a group home, you've been placed with your grandparents. There was a guardianship actually established with your grandmother a few … months ago. Multitude and multitude of services provided over the years.
>
> You have been adjudicated delinquent of four counts of first degree sexual assault of a child. At your dispositional hearing on December 2nd there absolutely was justification then for the court to put you into the serious juvenile offender program but I imposed it and stayed it because I felt you deserved another shot because of your history. We talked about it during that dispositional hearing about how I didn't expect perfection, but I did expect basic things from you. Go to school, do your homework, be respectful to your

grandmother and your grandfather, don't hurt anybody, don't use drugs and go to counseling. Again, not expecting perfection.

But within days of you being in court and escaping by the skin of your teeth from not having to do SJO, you're up and [at] it again and that is what really concerns me in terms of protecting the public and that includes your family members. Whether your grandmother recognizes it or not, I am so glad that you started treatment and that you were able to start opening up to your counselor, but I will be frank. At this point it's *one piece of the puzzle.…* It's a small puzzle. There are very few pieces, but it's *one piece that I have to consider*.

As part of your dispositional order on December 2nd I said I want monthly updates from HHS, from Mr. Lang, on how you're doing. He filed one on December 27th and I'm going to just highlight a few things in here. On December 5th you had an unexcused absence. Three days after we had been in court. Three. On 12/6 Mr. Lang physically went to your house. You were refusing to go to school. You were in bed refusing to go. You didn't care if you went to Lincoln Hills. I know what that is. That's a teenager mouthing off and probably saying what he doesn't mean because I'm sure you do care if it's Lincoln Hills. But you're being oppositional.

[Mr. Lang] ripped your blanket off, tried to get you to get up. He then saw the nicotine vape device on your dresser. He took it. You became upset, swearing at him. You eventually got up, put your shoes on, you then ran out the front door and ran up the road telling [Mr. Lang] to report you. Eventually you came back and you said you'd go to school if your grandpa could take you so your grandpa took you. You were late but at least you got there.

December 12th you had a drug test done which later turned up positive. You said you were going to go to school. Again, you aren't on a full day. You're on a very limited schedule for school. You didn't go. Your grandfather has reported you were continually trying to manipulate your grandmother to buy you Delta 8 THC cartridges for a vape and would threaten various things including you won't go to school if she won't get you the drugs. He notes in this progress report that you were going to treatment. Again, a positive weighing *on the scale here*.

You stole money from your grandmother and then at the end of December you broke your X-Box and some other

15

property trying to manipulate your grandmother again into buying you drugs, a THC Delt cart and threatening you were going to start huffing again if you didn't get it, et cetera. So that's really, really concerning.

And on January 9th the State filed their request to … lift the stay. This is not a revision of your dispositional order. This is *a lift of a stay* that was imposed. They're different. And then even *knowing* that that was a *potential* here, you continued to act out. On January 26th TPC request was filed by the Department. You still weren't going to school. You'd had three positive UAs for THC since the start of supervision, you were still verbally intimidating and threatening your grandmother, punching holes in the walls, you threatened to kill your grandfather and you were held in secure by another judge ….

I have reviewed the materials on file by your therapist, by Mr. Lang and by you, yourself. I've heard the statement of the State. I've heard Mr. Lang, HHS's position here, and I've heard the argument of [your counsel] and I've heard your mother's heartfelt plea but I will be frank with you which I have always tried to be. Enough is enough. I am concerned for public safety here bottom line. I am absolutely concerned that if I just say we're going to give you one more chance, that it is going to result in some sort of tragedy even knowing that you finally found a counselor that can help you, maybe that you're opening up to, everything else *outweighs* that.

Under [WIS. STAT. §] 938.34(4h) you do qualify for the SJO. I *already imposed it back in December*. You've been adjudicated delinquent of four counts of [WIS. STAT. §] 948.01(1)(b) and the only other disposition that is appropriate is juvenile corrections because you are a danger to the public. Your sexual assaults, threats to others, damage to property, drug use. You need restrictive custodial treatment. I don't know of any other way at this time to stop this behavior because *it's escalating* and I am really concerned whether … you would regret it later or not that something really bad is going to happen.

Under [WIS. STAT. §] 938.538 I'm … lifting the stay … on the SJO program. The Department of Corrections shall administer this program and shall have custody, supervision and control over [Lincoln].… [T]he DOC shall determine where his placement will be. I find that placement in the home under the guardianship with his grandmother is contrary to his welfare and to the welfare of the community for the reasons I've already stated.

16

> There have been countless reasonable efforts made by the Department over many years …. All kinds of family services, therapies, out-of-home placements, trial reunifications, help with school, parenting classes and then for [Lincoln] the treatment, the supervision, the group home, everything here.
>
> There have been more than enough reasonable efforts made to prevent this and *because of the findings that I've had to make here, I am no longer staying the imposition of the sex offender registry* because I can't find that it's in the public's best interests to do so.

(Emphases added.)

¶23 When the circuit court asked counsel for Lincoln if there was anything that needed to be addressed, counsel stated: "I do just want to make a record here that I was never notified that we would be talking about a lift of the stay of registration. I don't believe that there's any of the filings that indicate that so I just want to make sure that is in the record." The court indicated that counsel's comments were "noted."

¶24 The circuit court concluded the hearing by stating, "I hate making this decision. I have *weighed this decision* in my mind *for many weeks now* ever since getting the request by the State." (Emphases added.)

¶25 Lincoln moved for postdisposition relief, which motion the court denied without a hearing. Lincoln appeals.

### *Discussion*

¶26 Lincoln contends he is entitled to a new hearing on the State's motion to lift the stay on the SJO disposition because the judge presiding at the hearing was biased. Specifically, he claims "[a] reasonable person would question the judge's impartiality at the [February 3, 2023] lift-of-stay hearing, given her unequivocal

promises [at the December 2, 2022 hearing] to lift the stay should Lincoln return to court." As to this issue, we conclude Lincoln failed to rebut the presumption that the judge acted impartially, and we affirm the circuit court's order lifting the stay of the SJO disposition.

¶27 Lincoln also claims the circuit court erred in lifting the stay of the sex offender registration requirement "as [the] procedure violated the requirements of WIS. STAT. § 938.34(16)." Specifically, he asserts he "was not given adequate notice that the stay of sex offender registration could be revoked" at the February 3 hearing. Because the State agrees it did not give Lincoln notice that it was seeking to lift the stay of sex offender registration and because the State otherwise fails to oppose Lincoln's arguments on this issue—and thus it concedes them—we reverse the court's order lifting that stay and remand the cause to the circuit court.

Lifting of the stay of the serious juvenile offender disposition

¶28 Lincoln asserts that the outcome of the February 3, 2023 hearing on whether to lift the stay of the SJO disposition was predetermined by the circuit court because at the December 2, 2022 hearing the court stated, "The court can stay the [SJO] order but if he violates any of the conditions of his supervision, it means the stay is lifted and he goes." For the following reasons, we conclude the court did not predetermine the outcome of the hearing but instead maintained its impartiality.

¶29 "The right to an impartial judge is fundamental to our notion of due process." *State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. We begin with the presumption that a judge "has acted fairly, impartially, and without bias." *Miller v. Carroll*, 2020 WI 56, ¶16, 392 Wis. 2d 49, 944 N.W.2d 542. "To overcome that presumption, the burden is on the party asserting judicial bias to show bias by a preponderance of the evidence." *Id.* Where, as here, the

18

question is whether the judge was objectively, as opposed to subjectively, biased, "[w]e ask whether there is 'a serious risk of actual bias—based on objective and reasonable perceptions." *Id.*, ¶24 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009)). "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" *Id.* In considering whether the presumption has been rebutted, we view the circuit court's statements "in context" and "consider the totality of the circumstances." *State v. Herrmann*, 2015 WI 84, ¶4, 364 Wis. 2d 336, 867 N.W.2d 772; *Miller*, 392 Wis. 2d 49, ¶25. "Under the objective approach, courts have traditionally considered whether 'there are objective facts demonstrating … the [circuit] judge in fact treated [the defendant] unfairly.'" *Herrmann*, 364 Wis. 2d 336, ¶27 (first alteration added; citation omitted). "In other words, they inquire into whether a reasonable person could conclude that the [circuit] judge failed to give the defendant a fair [hearing]." *Id.* "Whether a judge was objectively not impartial is a question of law that we review independently." *Id.*, ¶23 (citation omitted).

¶30 Considering the entirety of the circuit court's comments at the December 2, 2022 and February 3, 2023 hearings, we believe a reasonable person present at the hearings and listening to the totality of the court's comments, as reflected by the transcripts, would not conclude the court had made up its mind and was predetermined to lift the stay at the February 3 hearing.

¶31 We recognize, of course, that at the December 2, 2022 hearing, the circuit court stated, as Lincoln points out, "[t]he court can stay the order but if he violates any of the conditions of his supervision, it means the stay is lifted and he goes." Additionally, the court further expressed, "I'm requiring passing grades. Show me more. That means if you don't go to school, it is a violation of your supervision and you'll come back into court and I'll lift the stay. It's not a choice

any more. Laziness is not a choice. This is your future." And, near the end of the hearing, when addressing "sanctions warnings," it stated that "the reality is if it reaches the level of needing a sanction … you're going SJO." These comments, however, came as part and parcel of lengthy comments by the court clearly taking on a parent-like role—a role sorely missing from Lincoln's life for its entirety—in trying to impress upon Lincoln the importance of going to school, following the rules, showing respect, etc., to the point of even counseling Lincoln's grandmother on the importance of establishing rules and "sticking to" the consequences.

¶32    Relatedly, the circuit court's back-and-forth engagement with Lincoln at the December 2, 2022 hearing appears to us as an attempt by the court to get him to appreciate the seriousness of his situation and to commit to following a healthier path for his own future. The totality of the court's comments strongly suggest the court was not in fact predetermining that it would lift the stay if he had a one-time violation of any of the conditions it was imposing—no matter how small the violation—but that it was instead trying to impress upon Lincoln the extreme seriousness of the situation and instill a healthy fear in him in order to get him to finally start taking his future seriously. The court told Lincoln he must follow the school's rules, and with Lang's monthly memo to the court, the court "want[ed] an update on how he is at home, school, what everything is that's going on in his life …. My point being I don't want him to be getting away with things. He has to follow the rules." The court then communicated directly with Lincoln to get him to "take on this challenge." While the court may have been trying to make Lincoln believe the stay would immediately be lifted if he so much as showed up tardy to school even one time or did not clean his room to the satisfaction of his grandmother, a reasonable observer would not conclude that if Lincoln violated "any of the conditions of his supervision," it would result in the court lifting the stay.

20

¶33    Review of the transcript from the February 3, 2023 hearing further supports the conclusion that the circuit court did not predetermine the outcome of that hearing but instead gave Lincoln a fair hearing. *See State v. Gudgeon*, 2006 WI App 143, ¶26, 295 Wis. 2d 189, 720 N.W.2d 114 (indicating a reviewing court may also consider the transcript of the challenged hearing itself to discern if it "dispel[s] … concerns" that a court made up its mind as to the outcome of the hearing "before the … hearing took place").  The court informed Lincoln that it was "tasked with looking at the total picture" and could not just consider his needs but also had to look at "the way you act out toward others" and how that "puts others at risk," stating that was "something that I have to consider *when I decide what to do here*."  (Emphasis added.)  The court recounted all the "[m]ultitude and multitude of services provided [to Lincoln] over the years."  It noted the positive aspect of him having started treatment but added that "[a]t this point it's *one piece of the puzzle … that I have to consider*."  (Emphasis added.)  The court addressed how it was only three days after the December 2, 2022 hearing that Lincoln had an unexcused absence, and it then proceeded to go into significant detail as to Lincoln's reported conduct since the December 2 hearing:  failing to attend school, drug use, manipulation, intimidation and property damage.  The court referenced Lang's report indicating Lincoln was "going to treatment," adding that that was "a positive weighing *on the scale here*."  (Emphasis added.)  The court expressed concern that Lincoln "continued to act out" between the time the State filed its request to lift the stay and the February 3 hearing even though he knew that a lift of the stay "was *a potential* here."  (Emphasis added.)  Indeed, the court's comments on this raise significant question as to whether it would have lifted the stay had Lincoln not "escalat[ed]" his negative behavior after the State filed its motion requesting the court lift the stay.  The court again recognized the positive of Lincoln finally having a counselor he could connect with but expressed that "everything else [including its

21

concern for public safety] *outweighs* that." (Emphasis added.) Expressing its concern with Lincoln's "escalating" behavior and that public safety was the "bottom line," the court agreed with the State's request to lift the stay.

¶34 Lincoln briefly notes the State made a comment at the February 3 hearing suggesting the circuit court should follow through with what it stated at the December 2 hearing—"This court was very clear with [Lincoln] back at the time of disposition if he stepped out of line; if we were here for a sanction hearing, then he would be sent to the SJO program." We note, however, that in their comments at the February 3 hearing, neither Lang, Lincoln's mother, nor his counsel—all of whom were present at and participated in the December 2 hearing—gave any indication they believed it was a foregone conclusion the court would lift the stay at that February 3 hearing. Lincoln's counsel also gave no indication she believed the court needed to recuse itself from the February 3 hearing and the lift-the-stay determination.

¶35 We conclude that the totality of the record indicates the circuit court did not predetermine the outcome of the February 3 hearing and that Lincoln has not overcome the presumption that the judge was, and in all respects appeared to be, fair and impartial at that hearing. Considering the record, particularly related to these two hearings, we do not believe a reasonable person would conclude that the court had made up its mind to lift the stay prior to the February 3 hearing. *See Goodson*, 320 Wis. 2d 166, ¶13. In *Goodson*, we stated that "[o]ur jurisprudence eschews the notion that a court may determine a sentence without scrutinizing individual circumstances." *Id.*, ¶17. Here, the court thoroughly scrutinized and weighed and balanced Lincoln's individual circumstances at the February 3 hearing. We affirm the court's decision lifting the stay of the SJO disposition.

Lifting of the stay of the sex offender registration requirement

¶36    On January 9, 2023, the State moved the circuit court to lift the stay "on the Serious Juvenile Offender program," based on Lincoln's conduct in the weeks following the December 2 hearing, which motion led to the February 3 hearing.  At the February 3 hearing, the court granted the State's request, lifting the stay on, and thus imposing, the SJO disposition.  Sua sponte, it also lifted the stay on the sex offender registration requirement part of Lincoln's disposition.  Counsel for Lincoln then "ma[d]e a record … that [she] was never notified that we would be talking about a lift of the stay of registration.  I don't believe that there's any of the filings that indicate that."

¶37    On appeal, Lincoln asserts his due process rights were violated because he "was not given adequate notice," pursuant to WIS. STAT. § 938.34(16), "that the stay of sex offender registration could be revoked."  He notes the State "said nothing whatsoever about lifting the separate stayed [sex offender registration disposition] order in either its pleadings or in its argument to the court," and the court decided to impose the sex offender registration requirement "without giving counsel adequate notice and without hearing additional evidence or argument on the matter."  Lincoln adds that "had [he] and his attorney been properly noticed that the court was considering lifting the sex offender registration stay, all relevant evidence could have been presented for the court's consideration, including current treatment records, the input of his therapist(s), or (most crucially) the missing sex offender evaluation which would actually determine Lincoln's risk level."

¶38    In its response brief, the State agrees it failed to give Lincoln notice in either its January 9 motion to the circuit court or at the February 3 hearing that it was seeking to lift the stay of sex offender registration, and states that in fact, it

never requested it. The State further writes that because WIS. STAT. § 938.34(16) "provides that once an order is stayed, notice and a hearing must be provided to the juvenile before the stay can be lifted," it "does not oppose giving Lincoln the opportunity to present evidence to aid the court" in determining whether lifting the stay of sex offender registration is appropriate. "Arguments not refuted are deemed conceded." *Singler v. Zurich Am. Ins. Co.*, 2014 WI App 108, ¶28, 357 Wis. 2d 604, 855 N.W.2d 707; *see also* *Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that "propositions of [parties] are taken as confessed which they do not undertake to refute" (citation omitted)). As a result, we reverse and remand for a new hearing on whether the stay of sex offender registration, which stay the court ordered at the December 2 hearing, should be lifted.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.