COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1517-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF721

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER W. LEBLANC,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Christopher W. LeBlanc appeals from a judgment of conviction for use of a computer to facilitate a child sex crime and an order denying his postconviction motion.  He argues the circuit court erroneously exercised its sentencing discretion by improperly considering LeBlanc's views on extramarital sex and by failing to craft an individualized sentence.  LeBlanc also asserts the circuit court's sentencing remarks demonstrated objective bias that violated his due process rights.  Finally, LeBlanc advances a claim for vindictive sentencing based on the prior exercise of his appeal rights.  We reject LeBlanc's arguments as set forth below and affirm.

## BACKGROUND

¶2     LeBlanc arranged to meet a 15-year-old after engaging in sexting with her using the Internet and cell phones.[1]  He was charged in a multi-count criminal complaint and pled guilty to a single count of using a computer to facilitate a child sex crime, contrary to WIS. STAT. § 948.075(1r) (2023-24).[2] LeBlanc was sentenced to fifteen years' initial confinement and twenty years' extended supervision.  He then filed a postconviction motion seeking resentencing, which the circuit court denied.

¶3     LeBlanc appealed, and we reversed and remanded for resentencing. See *State v. LeBlanc*, No. 2020AP62-CR, unpublished slip op. (July 30, 2021). We determined the extended supervision portion of LeBlanc's sentence was excessive.  We declined to address LeBlanc's alternative argument that he had

---

[1] Law enforcement had taken over communications shortly before the planned meeting.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

been sentenced based on an improper factor—namely his belief that extramarital sex was not sinful.[3]

¶4 At resentencing before a different judge, the circuit court stated it had reviewed the presentence investigation report (PSI) prepared in 2019 at the time of LeBlanc's original sentencing.[4] The PSI described LeBlanc's sexual history, including the fact that he had engaged in extramarital sex during his marriage. LeBlanc recounted his various sexual encounters with men and women while he was employed as a truck driver. With respect to his views on sexual activity, LeBlanc stated, "I don't think it's sinful. I don't believe that you have to be married to have sex." The PSI author concluded that LeBlanc's "occupation and lifestyle subjects the public to an extreme amount of unnecessary risk in multiple state jurisdictions."

¶5 The circuit court also reviewed the transcript of the postconviction hearing, where LeBlanc's counsel had argued that LeBlanc's permissive attitude toward extramarital sex did not make him a danger to the public. The court at the resentencing hearing extensively commented upon what it viewed as the cultural problems arising from such "selfish behavior."

---

[3] Despite not reaching the issue, we did set forth the "appropriate standards that apply at all sentencings," noting that if LeBlanc had been actually sentenced based on his religious beliefs or his "permissive attitudes towards sexual practices," those would constitute improper sentencing considerations. *See* ***State v. LeBlanc***, No. 2020AP62-CR, unpublished slip op., ¶¶14-18 (July 30, 2021).

[4] The Honorable Jason A. Rossell presided over LeBlanc's original sentencing hearing. The resentencing occurred before the Honorable Bruce E. Schroder.

¶6    The circuit court stated its comments in this regard were a "reaction to what I have read here from the defendant's prior attorney" and would not affect LeBlanc's sentence:

> I want it understood that the defendant's views on the institution of marriage or about sexual mor[es], which, by the way, … do have sponsorship in the State statutes which makes policy decisions all the time, but, you know, that isn't necessary to touch any of that in dealing with this case, so I explicitly state that while I have sounded off about it, nothing in the sentence that is imposed today is reflective of condemnation of the defendant's views[,] … it is not figuring any kind of religious or moral beliefs into the sentencing except to the extent that they are moral beliefs that underlie things like you don't have sexual relations with children, 15-year-old girls.

¶7    The circuit court echoed in its consideration of the sentencing factors that LeBlanc's views about the propriety of extramarital sex would play no role in the sentencing decision.  The court stated,

> you don't have to make any conclusions about his religiosity or lack thereof or his opinions about how sexual practices should be regulated, if at all.  None of that has got any bearing on just making it loud and clear here these are the things we don't tolerate, and one of them is tormenting and victimizing a … 15-year-old girl.

After focusing on the underlying facts, the court stated that general deterrence was the single most important factor underlying the sentence.  It discounted LeBlanc's rehabilitative potential.  Ultimately, the court imposed a thirty-five year sentence, consisting of twenty years' initial confinement and fifteen years' extended supervision.

¶8    LeBlanc filed a motion for postconviction relief, again challenging his sentence.  The court concluded it had considered the proper sentencing factors, had not based the sentence on LeBlanc's views on extramarital sex, had not

4

engaged in judicial misconduct, and had not improperly punished LeBlanc for exercising his appellate rights. LeBlanc appeals.

## DISCUSSION

¶9 LeBlanc renews his four postconviction arguments that: (1) the circuit court erroneously exercised its discretion by basing the sentence on LeBlanc's views on extramarital sex; (2) the court erroneously exercised its discretion by failing to craft an individualized sentence; (3) LeBlanc's due process right to be sentenced by an impartial judge was violated; and (4) LeBlanc was punished for exercising his appellate rights. We reject each of these arguments.

> I.   *LeBlanc has failed to demonstrate the circuit court actually relied on an improper factor, as the court explicitly stated that LeBlanc's views on extramarital sex played no part in his sentence.*

¶10 LeBlanc contends he was sentenced based on an improper factor: his views on extramarital sex. A circuit court erroneously exercises its discretion when it bases a defendant's sentence on clearly irrelevant or improper factors. *State v. Loomis*, 2016 WI 68, ¶31, 371 Wis. 2d 235, 881 N.W.2d 749. The defendant bears the burden of demonstrating the court's reliance on such factors by clear and convincing evidence. *Id.* This, in turn, requires "evidence indicating that it is 'highly probable or reasonably certain' that the circuit court actually relied on [an improper factor] when imposing its sentence." *State v. Harris*, 2010 WI 79, ¶35, 326 Wis. 2d 685, 786 N.W.2d 409.

¶11 LeBlanc has not satisfied this burden. A sentencing court's mere discussion of a particular factor does not demonstrate actual reliance. *See State v. Alexander*, 2015 WI 6, ¶26, 360 Wis. 2d 292, 858 N.W.2d 662. Here, the circuit court was crystal clear that although it was commenting upon some of defense

5

counsel's prior arguments, its opinions about the propriety of LeBlanc's views on extramarital sex would have no impact on its sentencing decision. The court also acknowledged this court's "guidance language," in which we indicated that LeBlanc's "permissive attitudes towards sexual practices" were not proper sentencing factors insofar as they did not pertain to the specific crime for sentencing. *See LeBlanc*, 2020AP62-CR, ¶18. Accordingly, we reject LeBlanc's actual-reliance argument.

II.     *LeBlanc's sentence was based on a consideration of proper sentencing factors and objectives and did not result from an erroneous exercise of discretion.*

¶12    Next, LeBlanc argues the circuit court's exercise of sentencing discretion failed to comply with *State v. Gallion*, 2004 WI 42, ¶14, 270 Wis. 2d 535, 678 N.W.2d 197. He asserts the court was required, but failed, to engage in a comprehensive and on-the-record explanation of its skepticism toward LeBlanc's rehabilitative potential, why it was rejecting all the mitigating factors LeBlanc offered, why the sentence imposed was the minimum necessary under all the circumstances, and why lifetime sex offender registration was warranted. Additionally, LeBlanc asserts the court's sentencing remarks were littered with irrelevant sentencing considerations.

¶13    We disagree that the circuit court's discussion of the relevant sentencing considerations was inadequate. *Gallion* requires an on-the-record examination of the reasons underlying the sentence imposed. *See Gallion*, 270 Wis. 2d 535, ¶28. The three primary factors a circuit court must consider at sentencing are the protection of the public, the gravity of the offense, and the defendant's rehabilitative needs. *State v. Bolstad*, 2021 WI App 81, ¶14, 399

6

Wis. 2d 815, 967 N.W.2d 164. The amount of explanation necessary will vary from case to case. *Id.*, ¶16.

¶14    The circuit court viewed the factors relevant to LeBlanc's sentencing as "clearcut." The court stated the facts themselves were controlling the sentence:

> He drove himself all these miles, planned it for days, equipped himself with all kinds of sexual toys and devices so that he wouldn't leave any evidence behind and set up an interlude with this 15-year-old child who he watched on the school bus so he could have sexual relations with her.

The court expressed skepticism at LeBlanc's rehabilitative potential and incredulity that the PSI identified LeBlanc as a low recidivism risk, particularly given that LeBlanc had "plenty of sexual outlets with both men and women over a lengthy period of time" but still chose to prey on a child. It is clear from the court's comments that both the gravity of the offense and the need for deterrence played significant roles in the court's sentencing decision.

¶15    LeBlanc contends this analysis ignored many mitigating factors and reflects an inadequate consideration of both his rehabilitative potential and whether the sentence imposed was the minimum necessary to achieve the circuit court's sentencing objectives. We agree with the State that the court's sentencing remarks were adequate. The nature and specific facts of the offense informed the court's overall sentence and its skepticism of LeBlanc's future willingness to conform his conduct to the requirements of the law. The kind of granular examination of every potentially applicable sentencing consideration is not required by our precedent, and the weight to be given to any secondary factors that the court does address is a matter for the court's discretion. *State v. Davis*, 2005 WI App 98, ¶18, 281 Wis. 2d 118, 698 N.W.2d 823; *see also State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76 ("The sentencing court

need not discuss all of these factors, but rather only those relevant to the particular case.").

¶16     Finally, as to the circuit court's alleged failure to address the reasons for the lifetime sex offender registration, we cannot divorce the registration discussion from the remainder of the court's sentencing remarks.  *See Harris*, 326 Wis. 2d 685, ¶45 ("Our obligation is to review the sentencing transcript as a whole ….").  The court's explanation of the reasons for the incarceration portion of the sentence, particularly its emphasis on the facts of the offense and the need for general deterrence, apply with equal force to its decision to impose lifetime sex offender registration.  We reject LeBlanc's assertion that the court's on-the-record discussion in this regard was insufficient.

III.     *The circuit court's sentencing remarks did not establish that it was objectively biased against LeBlanc.*

¶17     A defendant has a due process right to be sentenced by an impartial judge.  **State v. Goodson**, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385.  A biased tribunal constitutes structural error and entitles the defendant to resentencing before a different judge.  *See* **State v. Gudgeon**, 2006 WI App 143, ¶10, 295 Wis. 2d 189, 720 N.W.2d 114.

¶18     Here, LeBlanc argues the circuit court's sentencing remarks created the appearance of bias against him in violation of due process principles.  Under the appearance-of-bias standard, LeBlanc must demonstrate that "a reasonable person—taking into consideration human psychological tendencies and weaknesses—concludes that the average judge could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." *Id.*, ¶24.

¶19 LeBlanc argues that the circuit court displayed objective bias for two reasons. First, he focuses on the court's discussion of what LeBlanc characterizes as "improper and irrelevant factors as well as an apparent disdain for [the Department of Correction's] favorable recommendations" toward LeBlanc and certain other offenders. Second, LeBlanc contends his sentence was "one of the harshest sentences ever given by any judge in the State of Wisconsin" for his crime. The appearance of bias on this latter point is enhanced, LeBlanc argues, because the court "did not consider applicable mitigating factors and LeBlanc's rehabilitative needs."

¶20 We agree with the State that none of these matters approach the "extreme circumstances" that constitute a due process violation. *See State v. Pinno*, 2014 WI 74, ¶94, 356 Wis. 2d 106, 850 N.W.2d 207. General discussions of perceived societal ills, as well as sentencing remarks that identify a personal connection to a type of crime, do not necessarily demonstrate objective bias. *See State v. Herrmann*, 2015 WI 84, ¶¶13-18, 48-66, 364 Wis. 2d 336, 867 N.W.2d 772. And they particularly do not demonstrate objective bias here, where the circuit court explicitly stated that those matters would play no part in its sentencing decision.

¶21 Nor does skepticism toward a PSI author's sentencing recommendation indicate objective bias. The PSI in this case recommended six to eight years of initial confinement and five to six years of extended supervision. The circuit court explained why it believed that amount of incarceration was grossly inadequate. The court's comments about the "irrational" nature of some Department of Corrections recommendations it had seen were made in that context. The comments are not indicative of an inability to hold the balance "nice, clear and true."

¶22 Finally, we reject LeBlanc's assertion that a "harsh" sentence, even in comparison to that of other defendants convicted of the same crime, demonstrates the appearance of bias. Relevant to this consideration, we note that a sentence within the applicable penalty range is, generally speaking, not so excessive or unduly harsh as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances. *See* ***State v. Grindemann***, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507. We perceive no basis to conclude that a sentence on the upper end of the available punishment suggests to a reasonable observer, under the circumstances of this case, that the judge was objectively biased against LeBlanc.

> *IV.    LeBlanc has failed to demonstrate his sentence was animated by a vindictive motive for his exercise of his appellate rights.*

¶23 It is well-established that due process protections prohibit the imposition of a vindictive sentence on a defendant who has successfully attacked a conviction. ***North Carolina v. Pearce***, 395 U.S. 711, 725 (1969), *overruled on other grounds by* ***Alabama v. Smith***, 490 U.S. 794 (1989). LeBlanc acknowledges that, even when a resentencing court's sentence is longer than the original sentence, no presumption of vindictiveness applies when different judges preside over the sentencings. ***State v. Naydihor***, 2004 WI 43, ¶52, 270 Wis. 2d 585, 678 N.W.2d 220.

¶24 Instead, LeBlanc bears the heavy burden of proving his new sentence was prompted by actual vindictiveness for the exercise of his appeal rights. *See* ***id.***, ¶33. With only the sentencing transcript as his proof, he has failed to meet that burden. The circuit court explained in its sentencing remarks that a lengthy sentence was necessitated by the facts of the case and the need for the

sentence to have a general deterrent effect. There was no vindictive element apparent in the court's sentencing rationale.

¶25 LeBlanc appears to argue a vindictive motive was implied by the resentencing court's review of the earlier sentencing materials and its opinion that "Judge Rossell did a really excellent job in discussing this matter." Notably, that comment occurred at the inception of the court's remarks regarding LeBlanc's views on extramarital sex, which the court explicitly stated played no part in its sentencing decision. Ultimately, LeBlanc has not provided any authority establishing it is improper for a judge at resentencing to review the prior sentencing materials, nor has he connected the resentencing court's review of those materials to a vindictive motive for the sentence ultimately imposed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

No.    2023AP1517(D)

¶26    LAZAR, J. (*dissenting*). "The [court] doth protest too much, methinks."  WILLIAM SHAKESPEARE, HAMLET act 3, sc. 2.

¶27    This judge has concerns that sentencing courts make overly broad use of "exculpatory" language to obscure the use of inappropriate factors when sentencing a defendant.  Here, the second sentencing judge[1] made great noise about how LeBlanc's unacceptable views on extramarital sex violated society's and religious mores, but that—despite that scandalous way of life—the court was *not* considering that depravity, that selfishness, that immorality in its deliberations.  So just what did the re-sentencing court—protesting loudly methinks—*not* rely upon.  In response to LeBlanc's first counsel's argument in the original sentencing that "the attitudes of having extramarital sex does not make him a danger to the public," that court stated "I don't agree with that at all."  The re-sentencing court then continued, in what can best be described as a diatribe:

> History is just riddled -- ... the history of what we see in the ruined lives of children who are victims of this kind of selfish behavior, and if that doesn't put the public in danger, we should look around at what culture we are living in today.
>
> ....
>
> And we don't even realize it.  It is like putting somebody in a bathtub and raising the temperature of the water by one degree every ten minutes, and the bather never knows that he is getting scalded because he's

---

[1] To avoid confusion, the second sentencing court, the Honorable Bruce E. Schroeder, shall be referred to as either the re-sentencing court or the circuit court.

desensitized to it by just the slowness of it, but we are living in a police state that police have to be in the schools. This is the culture that we are living in. It's sick. It's sick. And to try to divorce the results that we have, the open gunfire on the streets, the wild abuse of drugs, the requests in spite of scientific evidence to the contrary to try to legalize drugs, this is a cesspool we are getting into, and it is largely due to the destruction of the -- what I grew up with, the sanctity of the family.

And one could go into the history books, as I said, and read about empires lost because of adulteress [sic] behavior, and as I say, the children, they are talking about how many suicides there were last year of little children, about all the abandoned children. There are enormous numbers of abandoned children.

The media never talks about that because that is not part of their agenda, but the fact of the matter is we have huge numbers of children who are living in emotional poverty because their fathers aren't involved with their lives.

….

… We are living in a state of fear, and it's all because in my estimation the destruction of the institutions that we once revered.

So the idea that this kind of behavior doesn't -- it ruins families and that it doesn't cause problems for society is nonsense. Now, I'm not saying any of that to -- I'm saying it in reaction to what I have read here from the defendant's prior attorney, and I am not commenting on the court of appeals' decision other than -- well, I'm not commenting on it.

I want it understood that the defendant's views on the institution of marriage or about sexual mor[es], which, by the way, as was pointed out by [the prior judge], do have sponsorship in the State statutes which makes policy decisions all the time, but, you know, that isn't necessary to touch any of that in dealing with this case, so I explicitly state that while I have sounded off about it, nothing in the sentence that is imposed today is reflective of condemnation of the defendant's views of -- it is not figuring any kind of religious or moral beliefs into the sentencing except to the extent that they are moral beliefs that underlie things like you don't have sexual relations with children, 15-year-old girls. It incenses me. I was incensed in reading some of these things and what I think

2

are irrational statements that are made, but the fact that -- I hear irrational statements all the time and they don't affect me. I just go, "Oh."

….

… What induces this man who has had plenty of sexual outlets with both men and women over a lengthy period of time and who has no attitudes about the wrongfulness of sexual behavior of any kind, that is what he says, and I make no comment on that, but what is going to deter him from this kind of conduct in the future?

.…

His motive was clear, the wrongfulness of his conduct was clear, and you don't have to make any conclusions about his religiosity or lack thereof or his opinions about how sexual practices should be regulated, if at all. None of that has got any bearing on just making it loud and clear here these are the things we don't tolerate, and one of them is tormenting and victimizing a young girl like this who was especially vulnerable, but I don't know that he knew that.

¶28    The majority highlights the insincere disclaimers that are nothing more than fig leaves in the re-sentencing court's statements and conveniently omits the comments that dominated the re-sentencing. Reviewing the statements in their entirety is sufficient to demonstrate that the court did protest too much— only after it stated its true and personal views—in order to cover those views and "disclaim" any inappropriateness in its deliberations. This is entirely the reason upon which the first sentence was sent back to the circuit court. Yet again, LeBlanc appears to have been sentenced based on his (lack of) religious beliefs and/or his "permissive attitudes towards sexual practices," contrary to the exhortations of the prior appellate opinion. *See* ***State v. LeBlanc***, No.2020AP62-CR, unpublished slip op., ¶¶14-18 (WI App July 30, 2021).

¶29    Yet now, the majority is comfortable with the re-sentencing court's "exercise of discretion" and eagerly hopes that we will all just "ignore the man

behind the curtain" and believe the repeated assurances that the re-sentencing court's actual personal, inappropriate remarks had no impact on its sentence and that the sentence was fairly, impartially, and appropriately imposed. Sentencing courts should not be able to use that blithe sleight of hand. They should be neutral arbiters, not express their personal views and then claim those views do not impact the sentence. This was, indeed, a sentence based on clearly irrelevant or improper factors. *See State v. Loomis*, 2016 WI 68, ¶31, 371 Wis. 2d 235, 881 N.W.2d 749 ("[A] sentencing court erroneously exercises its discretion when its sentencing decision is not based on the facts in the record."). It is, indeed, "highly probable or reasonably certain" that the re-sentencing court "actually relied on [improper factors] when imposing its sentence." *See State v. Harris*, 2010 WI 79, ¶35, 326 Wis. 2d 685, 786 N.W.2d 409. Although, the re-sentencing court may have clearly—crystal clearly—stated that its comments would not impact the sentence, it only did so *after* its lengthy diatribe. This judge does not believe that sleight-of-hand "protestation."

¶30 Moreover, the Record is replete with more than mere appearance that the re-sentencing judge was biased against LeBlanc for LeBlanc's non-traditional views of sex and his unorthodox sexual history. This calls into question LeBlanc's right to be sentenced by an impartial judge. *See State v. Goodson*, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. LeBlanc was deemed selfish, a destroyer of all that is/was good in our society, the reason that children are abandoned in numbers too high to calculate, and the cause for the prevalence of drugs on our streets. Adulterers, which LeBlanc admitted he was, have laid waste to society and fear is now rampant in our streets. The disdain dripping from the re-sentencing court's words was such that any reasonable person sitting in the defendant's chair would have felt a chill down his spine when he realized that he

was about to be sentenced, not for his heinous conduct,[2] but for his lifestyle and free-love beliefs. Anyone sitting in the defendant's chair would have known that the sentencing judge "could not be trusted to 'hold the balance nice, clear and true' under all the circumstances." *State v. Gudgeon*, 2006 WI App 143, ¶24, 295 Wis. 2d 189, 720 N.W.2d 114. What happened during the re-sentencing was inappropriate.

¶31 Finally, given the re-sentencing court's obvious disdain for LeBlanc's lifestyle and beliefs, its repeated statements brushing off the recommendations of the drafters of LeBlanc's pre-sentence investigation report, the backhanded comments about our prior opinion remanding the matter, and the recommendations of the State, LeBlanc has met his burden to establish that there was additional blowback for his initial, successful appeal. It is not merely that the new sentence added five more years of initial confinement, it is the manner in which the sentence was imposed. Vindictiveness peeked through all of the re-sentencing court's statements on the depravity of society and the harms that rained down on adulterers throughout history. Due process demands that a re-sentencing judge, imposing a new sentence after a successful appeal, must set aside any bad feelings, lingering anger, or righteous indignation that a defendant had the impertinence not only to appeal, but to appeal successfully. *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

¶32 In my view, LeBlanc has met his burdens to establish three of his claims: (1) the re-sentencing court actually relied on improper factors in the

---

[2] And, this conduct—preying on young children—is indeed heinous.

imposition of his sentence; (2) the court was objectively biased against him; and (3) his sentence was animated by a vindictive motive due to his exercise of his appellate rights. It is for all of these reasons that I respectfully dissent.