COURT OF APPEALS
DECISION
DATED AND FILED

August 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2204**

Cir. Ct. No. 2022PR34

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE ESTATE OF WAYNE A. LUEDTKE:

JEREMY MCCUNE,

　CREDITOR-APPELLANT,

V.

THE ESTATE OF WAYNE A. LUEDTKE,

　RESPONDENT.

　　　　APPEAL from an order of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Affirmed*.

　　　　Before Stark, P.J., Hruz, and Gill, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Jeremy McCune, pro se, appeals a circuit court order denying his claim for breach of contract against the Estate of Wayne Luedtke after an evidentiary hearing.  McCune argues that the court made factual and legal errors and that bias interfered with its role as an impartial decisionmaker.  McCune also argues that the transcript of the evidentiary hearing is inadequate.  We reject McCune's arguments and affirm.

## BACKGROUND

¶2    McCune is the owner and operator of Northland Signs, a business that includes leasing space on private property for advertising signs and then leasing those signs to advertisers.  In 2003, McCune entered into a lease with Armand and Elsie Luedtke, who are Wayne's parents, for a sign structure located on the Luedke family property.[1]

¶3    In 2017, James Shipp moved into a mobile home located on the property near the sign.  According to McCune, after Shipp moved in, "the area around the sign became cluttered with various items and objects."  McCune discussed the clutter with Armand, who told McCune that Wayne would "talk to the guy."  McCune had a subsequent conversation with Armand on June 1, 2020, about plantings near the sign.  McCune informed Armand that "since access to the sign with ladders was necessary to maintain the sign, the plantings could not be there."  McCune asserts that after that conversation, "the conditions near and around the sign were kept in an acceptable condition," so McCune entered into a lease extension agreement with Armand and Wayne on August 1, 2020.

---

[1]  For the ease of the reader, we refer to Armand and Wayne by their first names.

¶4    According to McCune, "the conditions near the sign once again worsened" in July 2021. Specifically, "McCune noticed that clutter had accumulated around the sign due to an ongoing yard/rummage sale." McCune also noticed "[o]ther miscellaneous items and distractions ... near and around the sign," including an old farm truck parked in front of the sign on one occasion, trailers full of manure parked next to the sign, and a white van parked adjacent to the sign. McCune "contacted Wayne and told him in no uncertain terms to make his tenant clean it up by the sign before we had problems there again." According to McCune, "no noticeable or measurable cleanup occurred."

¶5    On September 1, 2021, the advertiser who was leasing the sign on the property told McCune that "he wasn't going to renew his lease because of all the junk and clutter in front of the sign." McCune told Wayne about the conversation with the advertiser and further stated, "I don't know what your problem is here, but you've got to keep it cleaned up. … [T]his cannot go on any longer. … [S]omething's going to have to give here. … [W]hat's it going to be?" According to McCune, "Wayne said we'll have to take the sign down. He said I want [Shipp] to do what he needs to do there."

¶6    McCune informed Wayne that he was in breach of their contract and that Wayne would have to "buy McCune out of the remainder of the contract." Wayne asked what the cost of a buyout would be, and McCune called Wayne back with a price on September 7, 2021. According to McCune, Wayne said, "[L]et me think about it." McCune then responded, "I'm not going to give you much time to think about it. This has already gone on too long. … I'll give you – I'll give you until tomorrow to decide." Wayne did not respond to two subsequent messages from McCune. On September 8, 2021, McCune removed the sign face from Wayne's property.

¶7 Wayne passed away on December 13, 2021. McCune filed a claim for breach of contract against Wayne's Estate on July 6, 2022. The circuit court conducted a contested evidentiary hearing on September 16, 2022, and it heard testimony from McCune and Shipp.[2]

¶8 The circuit court denied McCune's claim on September 26, 2022. A breach of contract claim has three elements: (1) an enforceable contract; (2) a failure to fulfill that contract; and (3) damages. *See Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582. Here, the court determined that McCune's claim failed on the second and third elements.

¶9 Regarding the second element, the circuit court determined that the clutter and junk on the property did not violate the terms of the lease. Instead, the lease required the Luedtkes to give McCune "reasonable access over and across the [p]roperty to and from the [s]ign location for the purpose of carrying out necessary operations." The lease further provided that the Luedtkes "or any other party acting on [their] behalf, shall not place or maintain any object, structure or device on the [p]roperty which would in any way obstruct the view of [l]essee's sign or obstruct ingress or egress to the [s]ign." The lease did not, however, have any provisions requiring the Luedtkes to keep the property clean or free of clutter, so long as ingress and egress remained. The court further noted that, because McCune was the drafter, the lease should be construed strictly against him.

¶10 The circuit court reviewed the photographs submitted by McCune and determined that they did not establish that Wayne's failure to clean up the property amounted to a breach of the lease provisions. Although the pictures showed that the

---

[2] McCune was represented at the evidentiary hearing, but his attorney withdrew on December 22, 2022.

property was "cluttered and junky," the pictures also showed that even with the clutter, "that sign can be accessed and the view is not obstructed." The court further found that Shipp was not acting on Wayne's behalf by conducting ongoing yard sales on the property.

¶11     Regarding the third element of a breach of contract claim, the circuit court determined that even if Wayne had breached the lease, McCune was not entitled to damages from Wayne. The court pointed to the lease provision stating that McCune could terminate the lease "without further liability or obligation" for a variety of reasons, including if "the advertising sign becomes visually obstructed." The court found that McCune terminated the lease when he removed the sign face without waiting to hear from Wayne. McCune appeals.

## DISCUSSION

¶12     At the outset, we note that McCune's briefs to this court are lengthy, and his arguments are, at times, jumbled. In addition, many of the authorities cited by McCune have no apparent bearing on his claim for breach of contract. We have made our best effort to identify and address those arguments that are relevant and supported by applicable authority. To the extent that McCune intended to raise additional arguments, we reject them as undeveloped. *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (we need not consider arguments that are unexplained or undeveloped).

## I. Alleged Legal Errors

¶13     McCune contends that the circuit court made several legal errors when interpreting the lease. "Contract interpretation presents a question of law that we review independently of … the circuit court … but benefitting from [its]

discussions." *Marx v. Morris*, 2019 WI 34, ¶20, 386 Wis. 2d 122, 925 N.W.2d 112 (citation omitted).

¶14　McCune first argues that the circuit court erroneously determined that an obstruction could only occur if the view of the sign was blocked. McCune argues that this construction of the lease was too narrow and did not give effect to the intent of the parties. *See Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426 ("The primary goal in contract interpretation is to give effect to the parties' intentions."); *see also Bitker & Gerner Co. v. Green Inv. Co.*, 273 Wis. 116, 120, 76 N.W.2d 549 (1956) ("So far as reasonably practicable [a contract] should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties." (citation omitted)). To make the lease a rational business instrument, McCune contends that the word "obstruct" should be interpreted broadly to mean "impede, retard, or interfere." Under McCune's proposed interpretation, the lease did in fact require "that the property needed to be clean and free of clutter."

¶15　The problem with this line of argument is that McCune testified that the language in the lease did not prohibit junk or clutter. Specifically, the circuit court asked McCune, "[W]here in the lease does it say that [Wayne] can't have it cluttered or there can be no junk?" McCune responded, "It doesn't say that per se in the language." This testimony contradicts McCune's assertion on appeal that the parties intended that the word "obstruct" would be interpreted broadly to prohibit all junk and clutter.

¶16　Second, McCune contends that the parties' past actions demonstrated that they intended that the property would be kept clear of clutter and junk. Specifically, McCune testified about past instances when McCune told Armand to

take care of an issue on the property, and Armand did. The Estate argues that McCune is impermissibly seeking to use parol evidence to vary the clear language of the contract. *See Habel v. Estate of Capelli*, 2020 WI App 15, ¶14, 391 Wis. 2d 399, 941 N.W.2d 858 (explaining that when contracting parties "embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake" (citation omitted)). Here, the lease contained a merger clause stating that "[t]his lease constitutes the complete and exclusive agreement of the parties" and also "the entire understanding between the parties." We therefore agree with the Estate that extrinsic evidence about the parties' course of dealings is barred by the parol evidence rule.

¶17 Third, McCune argues that the circuit court erred by construing the lease against him. The Estate argues that, to the extent that the terms in the lease were ambiguous, the court properly construed any ambiguity against McCune. *See Walters v. National Props., LLC*, 2005 WI 87, ¶14, 282 Wis. 2d 176, 699 N.W.2d 71 ("[C]ourts construe ambiguous language 'most strongly' against the drafter." (citation omitted)). Here, McCune's claim for breach of contract rested on the argument that the lease implicitly required Wayne to keep the property free of junk and clutter. In rejecting this argument, the court stated, "[T]he interpretation of this contract and what's in this contract is against the drafter. And here, the drafter is Mr. McCune. Mr. Luedtke was not involved in drafting this at all." We see no error in the court's reference to these facts when rejecting McCune's argument that the terms of the lease should be interpreted to impose additional obligations on Wayne. *See id*.

¶18 Fourth, McCune argues that even if the lease did not require Wayne to clean the clutter and junk, Wayne's refusal to do so violated the implied covenant of good faith and fair dealing. *See Reetz v. Advocate Aurora Health, Inc.*, 2022 WI App 59, ¶31, 405 Wis. 2d 298, 983 N.W.2d 669 ("[T]o state a claim for a breach of this covenant, the plaintiff must plead that a valid contract with express, definite, enforceable terms exists, and that the breaching party acted without good faith in its performance of that contract."). The Estate argues that McCune did not make this argument in the circuit court. McCune's reply brief is silent on this point.

¶19 "It is well established that a failure to make a specific argument in the circuit court forfeits the right to make that challenge on appeal." *State v. Dudas*, 2020 WI App 18, ¶45, 391 Wis. 2d 494, 942 N.W.2d 490. In order to avoid forfeiting an issue, "a party must raise [it] with sufficient prominence such that the [circuit] court understands that it is called upon to make a ruling." *State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467.[3] Here, because McCune did not present this argument to the circuit court, the court did not make any factual findings on the necessary element of whether Wayne acted without good faith in his performance of the lease. *See Reetz*, 405 Wis. 2d 298, ¶31. We therefore conclude that McCune has forfeited this argument.

¶20 Fifth, McCune argues that the circuit court erred by not considering "the overall intent and purpose" of the lease and, therefore, did not properly analyze the ways in which Wayne's conduct frustrated that purpose. *See* WIS JI—CIVIL 3060 ("If one person enters into a contract with another, there is an implied promise by each that each person will do nothing to hinder or obstruct performance by the

---

[3] Although the quoted sentence refers to "waiver," waiver and forfeiture are frequently confused in our decisional law. *See State v. Ndina*, 2009 WI 21, ¶28, 315 Wis. 2d 653, 761 N.W.2d 612 ("The case law is rife with confusion about the words 'waiver' and 'forfeiture.'").

other."). McCune does not develop any argument about how Wayne hindered or obstructed McCune's performance under the lease. Instead, McCune reiterates his argument that the lease provisions regarding access and obstruction required Wayne to keep the property free from clutter. We have already rejected this argument.

¶21 Finally, even if McCune were correct that Wayne's failure to clean the property constituted a breach, the circuit court also determined that McCune had not established the element of damages. Here, the lease permits McCune to cancel the contract for reasons that "include but [are] not limited to: the advertising sign becomes visually obstructed; nearby roads are closed to traffic; or the advertising sign becomes unprofitable." The lease, however, does not provide that McCune can seek damages from Wayne in the event of McCune's cancelation. McCune has not developed any argument that the court erred in its analysis of this element. Therefore, even if McCune successfully demonstrated a breach by Wayne, we could still affirm the circuit court's denial of his claim on this ground.

## II. Factual Challenges

¶22 In McCune's brief, we can discern challenges to three of the circuit court's factual findings. We "defer[ ] to the circuit court's findings of fact unless they are unsupported by the record and are, therefore, clearly erroneous." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530 (citation omitted). "Moreover, we search the record not for evidence opposing the circuit court's decision, but for evidence supporting it." *Id.*, ¶12 (citation omitted).

¶23 First, McCune contends that the court erred by determining that the clutter did not interfere with access to the sign and did not obstruct the view of the sign. The court reviewed the photographs submitted by McCune. Although several

pictures showed clutter near the sign, the court did not see any evidence that access was blocked. The only partial obstruction that the court observed in the photographs was a small tree, and the court noted that the tree would not have blocked the view of the sign from the highway. We have reviewed these photographs as well and agree with the court's determination that the clutter did not impede access to the sign or obstruct the view of the sign.[4] We therefore conclude that the court's finding that Wayne did not breach the lease by impeding access to or obstructing the sign was not clearly erroneous.

¶24 Second, McCune contends that the circuit court erred by finding that his decision to remove the sign face amounted to a termination of the lease. In making this finding, the court stated,

> I believe the actions by Mr. McCune of going to remove that sign without waiting to hear from Wayne, whether or not he wished to buy him out or if there was going to be a small claims action involving this sign, the act of going and removing the sign face which was owned by Northland signs, the court finds that Northland signs terminated the contract and not Mr. Luedtke.

¶25 In his brief, McCune "freely admits that he did indeed ultimately remove the advertising sign face." McCune argues, however, that he took this action "for good reason," including the fact that McCune's "advertiser did not renew his lease, but had been a good customer and McCune felt bad about what happened." Accordingly, McCune gave the advertiser space at another property but "was unable to rent the sign space to another advertiser." Nothing in McCune's explanation is

---

[4] One photograph shows a red truck parked in front of the sign and partially obstructing the view. However, this photograph is dated May 9, 2020, and therefore predates the lease extension. As a result, this photograph is not evidence that Wayne breached the lease by obstructing the view of the sign.

at odds with the circuit court's determination that his act of removing the sign face was a voluntary decision that terminated the lease.

¶26 McCune further argues that he removed the sign face because Wayne "ordered the sign down." This assertion is not supported by the testimony at the hearing. Specifically, McCune gave Wayne the ultimatum that "this cannot go on any longer. … [W]hat's it going to be?" Wayne responded, "[W]e'll have to take the sign down." McCune then told Wayne, "[Y]ou can take the sign down, but it's not quite as simple as just taking the sign down. … [Y]ou're gonna have to pay me, buy me out of the remainder of the contract." Wayne asked for a price, and McCune told him that he needed time to calculate it.

¶27 On September 7, McCune told Wayne the cost of a buyout was $6,200. McCune testified that Wayne said, "[W]ell, let me think about it." McCune responded, "[W]ell, I'm not going to give you much time to think about it. This has already gone on too long. … I'll give you until tomorrow to decide." McCune did not hear back from Wayne before removing the sign face. None of this testimony undermines the circuit court's determination that McCune's decision to remove the sign was a voluntary act, versus one mandated by Wayne, that terminated the lease. We therefore see no clear error in this aspect of the court's factual findings.

¶28 McCune argues that the circuit court's reasoning is flawed because the lease calls for McCune to give ten days' written notice before termination. Because McCune never provided Wayne with written notice, McCune argues that he could not have had the intent to terminate the lease. McCune's arguments regarding his intent have no bearing on the court's determination regarding the effect of McCune's voluntary act of removing the sign face. Moreover, the court noted several instances when McCune's actions did not conform to the parties'

rights and obligations under the lease, such as when McCune demanded that Armand remove plantings around the sign and when McCune told Wayne that he would need to buy out the remainder of the lease. Given this history, the fact that McCune did not follow the lease provision requiring written notice does not undermine the court's conclusion that McCune terminated the lease.[5]

¶29 Third, McCune argues that the circuit court erred by concluding that Shipp was not acting "on behalf of" Wayne. We need not consider this argument because even if McCune is correct, it is ultimately irrelevant given the circuit court's conclusion that Shipp's clutter did not breach the lease by impeding access or obstructing the view of the sign.

## III. Bias

¶30 We next address McCune's arguments that the circuit court judge was biased against him. We begin by noting that McCune filed a motion for recusal on May 8, 2023, which the circuit court judge denied. McCune's motion argued that "[g]iven [the judge's] inherent vested interest [in] having her decision affirmed on appeal and proximate ties to the issue at hand, good cause exists for her temporary recusal to avoid appearance of conflict of interest, impartiality, bias or prejudice." McCune's recusal motion did not identify any of the grounds for bias that he now argues on appeal.

---

[5] McCune also argues that if his act of removing the sign face did terminate the lease, then Wayne would have sued him. This argument is a nonstarter because the Estate characterizes the situation as a mutual abandonment. *See* WIS JI—CIVIL 3078 ("Obligations under a contract may be terminated if the contract is abandoned by both of the parties."). In addition, we note that Wayne was receiving $400 per year under the lease, which may not have been a sufficient incentive for Wayne to spend time and money on a lawsuit.

¶31    In this appeal, McCune argues that the judge was objectively biased. "Objective bias can exist in two situations." *State v. Goodson*, 2009 WI App 107, ¶9, 320 Wis. 2d 166, 771 N.W.2d 385.  First, "the appearance of partiality constitutes objective bias when a reasonable person could question the court's impartiality based on the court's statements." *Id.*  Second, "objective bias occurs where 'there are objective facts demonstrating … the trial judge in fact treated [a party] unfairly.'" *Id.* (citation omitted).  "Whether a circuit court's partiality can be questioned is a matter of law that we review independently."  *Id.*, ¶7 (citation omitted).

¶32    McCune directs our attention to an exchange between the circuit court judge and his attorney that occurred early in the hearing:

> THE COURT: All right.  Mr. Benson, I do have the lease that you have filed, but I would need some testimony with that.  Your claim is for $9,900, that you say is the loss of revenue from this, and the value of the lease in itself would only be $4,000.
>
> MR. BENSON: Well, that was how much he was—
>
> THE COURT: Going to pay.  The value towards the decedent—
>
> MR. BENSON: Right.
>
> THE COURT: —was only $4,000.  It is—I'm seeing a unilateral termination.  It doesn't—I don't see the ability in this lease to allow the lessor to be able to terminate.
>
> MR. BENSON: Correct.

¶33    McCune argues that, based on the circuit court judge's use of the word "only," "[i]t can rightly be inferred that the judge had concluded that the payment amount … was inadequate and that McCune had not been fair with [Wayne]."  We disagree that McCune's inference is reasonable, given the full context of this

statement. Specifically, the circuit court judge had just heard each party's position on the claim and was identifying an issue on which McCune would need to provide additional evidence, given the difference between the value of the lease and McCune's damages claim.

¶34 McCune also argues that the quoted section of the transcript shows that "the judge immediately jumped to conclude that a unilateral termination of the lease by McCune took place." McCune is taking this statement out of context. The circuit court judge was describing the contents of the lease, which contains a provision permitting McCune to terminate but does not contain any provision permitting Wayne to terminate. Moreover, McCune's attorney responded that the circuit court judge's description of the lease was "correct."

¶35 McCune further argues that the circuit court judge demonstrated bias by advocating for Wayne when interpreting the contract and by improperly construing the lease against McCune. These arguments are simply retooling the legal arguments that McCune raised above. Because we have already concluded on de novo review that the court's interpretation of the lease was correct, we reject McCune's contention that the court's reasoning reflected bias.

¶36 McCune also contends that the circuit court judge chose which testimony to believe in order to support a predetermined conclusion. This aspect of McCune's argument is nothing more than a complaint about the court's role as a factfinder. Circuit courts must make credibility determinations, and the fact that the court's determinations did not favor McCune is not evidence of bias. *See generally* ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate

arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony.").

¶37    In addition, McCune speculates that the circuit court judge may have had a relationship with a representative of the Estate, Kimberly Feit, who was originally scheduled to appear at the hearing.[6]  McCune's speculation is based on the fact that he later learned that Feit works in an office located in the courthouse. McCune argues that, at a minimum, this relationship should have been disclosed. McCune's argument that the circuit court judge had a relationship with Feit lacks any factual or legal basis.  Further, as Feit did not testify at the evidentiary hearing, any claimed relationship could not have affected the court's decision.

¶38    Finally, McCune contends that the circuit court judge showed bias when she stated,

> I'm going to take judicial notice.  I'm very familiar with this property.  I think everybody is who drives by to go towards Grantsburg.  Everybody has seen this property at various times in various times of the year.  I honestly didn't know that this property was going to be the property or a property that was going to be of issue.  So I have no idea what it looks like here today or with the sign or not of a sign.

McCune argues that the court's comment that "everybody" has seen the property "is a gross overstatement that is not a known fact."  McCune further argues that "[t]he judge injected a highly controvertible personal opinion regarding issues that under statute, are not matters proper to take judicial notice of."

---

[6] Feit did not in fact appear at the hearing.  The circuit court thought she was present, but it was then informed that the Estate would instead be represented by Feit's sister because Feit was unable to attend the hearing.

¶39　The Estate argues that we should not consider this argument because McCune failed to object in the circuit court, as required by WIS. STAT. § 902.01 (2023-24).[7]　Even though McCune may not have preserved his challenge to the propriety of the court's decision to take judicial notice, we can still consider his argument that this statement showed that the judge herself was objectively biased. *See **Goodson***, 320 Wis. 2d 166, ¶9.

¶40　The Estate further argues that the circuit court judge's comment did not address the condition of the sign but rather "merely made the parties aware that she had seen the property where the sign was placed."　We agree that the judge's familiarity with the property is not an indication of objective bias against McCune.　Even if the court improvidently stated that it was taking judicial notice of the location of the sign, the court made its findings based on the evidence presented at the hearing.　We see no basis for concluding that "a reasonable person could question the court's impartiality based on the court's statement[]." *See **id.***

## IV.　Transcript Errors

¶41　McCune argues that the transcript of the circuit court hearing is incomplete and inadequate to permit meaningful review.[8]　"Whether a transcript is sufficient under appropriate standards to serve its necessary purpose on appeal is

---

[7] All references to the Wisconsin Statutes are to the 2023-24 version.

[8] McCune also argues that we "wrongfully ignored" his motion to compel access to any recordings of the proceedings, which he filed on March 13, 2023, and in which he asserted a video of the trial was previously livestreamed and posted online through the circuit court's official website.　We did not ignore McCune's motion but instead denied it by order dated March 15, 2023. We explained that "the mechanism by which a court may compel a public official to perform a certain act is a writ of mandamus."

ultimately a matter of law for the appellate courts." ***State v. Perry***, 136 Wis. 2d 92, 97, 401 N.W.2d 748 (1987).

¶42    While this appeal was pending, McCune filed several motions with this court asking us to address the accuracy of the transcript.  In response to McCune's motion dated March 13, 2023, we explained that "the proper procedure to challenge alleged inaccuracies in a transcript is to file a motion to correct the record … in 'the court in which the record is located.'"  *See* WIS. STAT. RULE 809.15(3).  Because "[t]he record for this appeal ha[d] not yet been transmitted to this court," we instructed McCune to direct his motion to the circuit court.

¶43    The court reporter subsequently submitted an amended transcript correcting three minor errors.  Upon further motion by McCune on April 14, 2023, we remanded the matter to the circuit court to determine which version of the transcript was correct.  We explained that because we are not a factfinding court, McCune "should direct his other challenges regarding the record to the circuit court."  McCune continued to file motions in this court, which we denied, directing him to address the circuit court's order on remand as the first issue in his appellate brief.

¶44    McCune contends that the circuit court's review on remand was inadequate because that court was required to conduct an inquiry.  *See **State v. DeLeon***, 127 Wis. 2d 74, 80-82, 377 N.W.2d 635 (Ct. App. 1985) (setting forth the process for addressing omissions in a transcript when 15 minutes of testimony were missing from the transcript of a criminal trial).  According to McCune, the court "has not engaged in any such inquiry."

17

¶45    We disagree that the circuit court did not engage in any inquiry.  The court's order in response to our remand states that "[t]he Court has reviewed the record in its entirety and has compared the filed transcripts with the entire existing record."  The court found that the amended transcript was an accurate record of the September hearing and that Exhibits 1-8 were the "only exhibits received and accepted by the Court in this dispute."  The court stated that "[n]o other documents were relied upon or became a part of the record."

¶46    McCune nonetheless contends that this inquiry was inadequate under ***DeLeon***.  The threshold problem for McCune is that the procedure in ***DeLeon*** only applies if McCune intends to argue that the alleged error would have affected the outcome.  *See **id.*** at 80 ("Before any inquiry concerning missing notes takes place, common sense demands that the appellant claim some reviewable error occurred during the missing portion of the trial.").  The Estate argues that "in this case, it is difficult to glean just what material 'transcript errors' McCune alleges."  As our supreme court explained in ***DeLeon***, "Obviously, the [circuit] court need not conduct an inquiry if the appellant has no intention of alleging error in the missing portion of the proceedings."  ***Id.***

¶47    Like the Estate, we see only one argument in McCune's opening brief regarding an alleged omission in the transcript.  Specifically, McCune argues that he had "attempt[ed] to establish via motions: [t]hat McCune did indeed state during the hearing that he took [Wayne] to [s]mall [c]laims [c]ourt."  McCune contends that the circuit court's subsequent statement that McCune should have taken Wayne to small claims court "would establish that the judge did not listen carefully to the testimony."  The Estate argues that this alleged omission is irrelevant and that "[a]ny related omission in the transcript would be equally irrelevant."  Accordingly, the Estate contends that we should reject McCune's complaints about the transcript

under the harmless error rule. *See* WIS. STAT. § 805.18(2) (courts will grant relief only when "the error complained of has affected the substantial rights of the party" seeking relief); *State v. Dyess*, 124 Wis. 2d 525, 543, 547, 370 N.W.2d 222 (1985) (stating that in distinguishing between harmless and prejudicial error, "the test should be whether there is a reasonable possibility that the error contributed to the conviction"). As part of its harmless error argument, the Estate contends that "[i]t is utterly conclusory—and disingenuous at best—for [McCune] to baldly assert that absent such 'errors' he would have won at trial."

¶48   McCune's reply brief does not identify any other material omissions in the transcript. Moreover, McCune argues that he has never claimed that absent the errors in the transcript, he would have prevailed.[9] Instead, McCune seems to be taking issue with the circuit court's general oversight of court reporters. We therefore conclude that, even if there are errors in the transcript, McCune has not demonstrated that any such errors would be a basis for reversal. *See* WIS. STAT. § 805.18(2).

## CONCLUSION

¶49   For the foregoing reasons, we conclude that McCune has not shown that the circuit court made factual or legal errors in denying his claim for breach of contract. We reject McCune's argument that the transcript of the evidentiary hearing is inadequate, and we also reject his arguments that the circuit court's decision reflected bias. We therefore affirm the court's order denying McCune's claim.

---

[9] In fact, McCune argues that the Estate's suggestion that he ever argued that "absent such errors [McCune] would have won" is a "fabrication" that is "sanction-worthy."

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.